[Civ. No. 12689. First Dist., Div. One. Mar. 15, 1945.]

ARTHUR T. BOERICKE et al., Respondents, v. J. HAR-
OLD WEISE et al., Appellants.

Emil G. Buehrer for Appellants.

George H. Hauerken and Alden Ames for Respondents.

PETERS, P. J.—Arthur T. Boericke, Charles C. Boericke, W. M. Breckenfeld and L. G. Gelinas, stockholders owning 212 of the 405 outstanding shares of Boericke and Runyon Company brought this action under section 315 of the Civil Code against the corporation, J. Harold Weise, Gillette Lane and Margaret Burns, who own between them 51 shares of the corporate stock, to have determined the validity of an election of the board of directors at a stockholders' meeting of May 11, 1943. Margaret Burns, who owns 45 shares of the corporate stock, subsequently joined with plaintiffs, and the corporation put in but a *pro forma* appearance. The real and only defendants are Weise and Lane who own but six shares of stock between them. The prayer of the complaint is that the court decree that the stockholders' meeting of May 11, 1943, was valid, and that the board then elected was validly elected; that a directors' meeting of August 14, 1943, was void; that Weise is a director of the company but not president; and that Lane is not a director, secretary, nor general manager.

The answer of Lane and Weise challenges the validity of the stockholders' meeting of May 11, 1943, and alleges such meeting was void and that the board of directors then elected was

improperly elected. The result, so it is alleged, is that the proper board of directors was the board elected prior to May 11, 1943, so that the meeting of this old board on August 14, 1943, was a proper meeting. It is also alleged that regardless of the validity of the May 11, 1943, meeting the plaintiffs have recognized and acknowledged the old board and are estopped to challenge its actions. It is also alleged that under date of July 30, 1943, some of the plaintiffs joined in a so-called voting trust agreement, and by cross-complaint defendants seek to have this voting trust enforced. By the prayer to their pleading defendants asked the court to dismiss the action, and sought a decree determining that the meeting of May 11, 1943, was void; that the meeting of directors of August 14, 1943, was a valid meeting; that the voting trust was valid and binding; and that until July 30, 1944, Weise could vote the stock of all signatories to that agreement.

The trial court found the facts substantially as they are alleged in the complaint, holding that the stockholders' meeting of May 11, 1943, was duly and regularly called and held, and that a new board of directors was then validly elected; that the meeting of the old board of directors on August 14, 1943, was not duly called and held, and the persons then present were not the members of the board of directors of the company; that the voting trust was void and illegal. Judgment was entered accordingly, and from this judgment defendants Weise and Lane appeal.

This action was brought under section 315 of the Civil Code. That section provides that: "Upon the filing of an action therefor by any shareholder, the superior court shall have the power to try and determine the validity of any election or appointment of any director of any domestic corporation. . . . The court may determine the person entitled to such office or may order a new election to be held or appointment to be made, and direct such other relief as may be just and proper." The section goes on to provide that upon filing the complaint the court shall fix a day for hearing which shall be within five days, unless for good cause a later day is fixed. This section has been in our law for many years. It was enacted in order that courts might have power to proceed in a summary manner to test the title of directors to office without recourse to the slow and cumbersome proceeding of quo warranto. (Ballentine and Sterling, Jr., Cali-

fornia Corporation Laws (1938 ed.), p. 107, § 99.) The remedy provided by the section is inherently equitable in nature. (*DeGarmo* v. *Goldman,* 19 Cal.2d 755 [123 P.2d 1].) The action being equitable, the court will administer complete relief and adjust the case in all of its branches in order to prevent multiplicity of actions. (*Whitehead* v. *Sweet,* 126 Cal. 67 [58 P. 376].)

█ The first contention of appellants is that under the section the trial court has no power to pass upon the validity of an election at the suit of one seeking to uphold the election; that its power can only be invoked by one who challenges the validity of an election. The contention is without merit. Section 315 is a remedial statute. It obviously was intended to confer upon the superior court the power to determine in a summary proceeding whether or not a particular director or the entire board was or was not properly elected or appointed in order that the corporation can properly function. To hold that the section only confers power to hear cases where a stockholder challenges an election, but cannot hear an action where a stockholder desires to uphold a challenged election, would be to limit the section so as partially to defeat its obvious purpose. There is nothing in the wording of the section to support appellants' position and no case is cited by them to support this contention. A reading of the section, and a consideration of its obvious purpose, demonstrates that the section is not so limited. It confers complete power to pass upon the ''validity'' of an election, and that means at the request of one who is seeking to uphold the election as well as one who is contesting it.

The facts giving rise to the present controversy are as follows: Boericke and Runyon Company was incorporated in California many years ago to manufacture and sell drugs. Its founder was Dr. William Boericke, now deceased. Upon his death approximately three-fourths of the stock of the company descended to his sons, respondents Dr. Charles C. and Arthur T. Boericke, and to Dr. Garth W. and W. Fay Boericke. Dr. Charles claims to have the proxy of Dr. Garth who resides in the East and who owns 68 shares, but otherwise Dr. Garth is not a party to this action. Fay likewise is not a party, being in business in the Philippines and having been interned by the Japanese during all periods here involved.

The remainder of the stock is held by employees and retired employees.

For many years prior to the dates here involved respondent Arthur Boericke had been president and general manager of Boericke and Runyon Company, and appellant Weise had been the legal adviser to the company and to several of the members of the Boericke family. Appellant Lane, for some time prior to the dates here involved, was the president and general manager of the Eopa Company, a wholly owned subsidiary of Boericke and Runyon Company.

The minutes of a board of directors' meeting of April 15, 1943, state that in April of 1943 Boericke and Runyon Company, then still under the management of Arthur Boericke, was suffering substantial losses. The same minutes disclose that the subsidiary, the Eopa Company, under the management of Lane, was producing substantial profits. At this meeting Lane, who had just purchased five shares of the company's stock, was elected to the board of directors. Sometime after this meeting, and prior to April 24, 1943, Lane worked out a proposed plan of operation for the Boericke and Runyon Company. This plan was submitted to a special meeting of the board of directors originally called for April 22, 1943. At that time the meeting was adjourned, there not being a quorum present, and the adjourned meeting was held on April 24, 1943. Directors Lane and Weise were present, as were directors Burns and Breckenfeld. Directors Charles and Arthur Boericke were absent. These six then constituted the board of directors. Lane's plan, which called for drastically limiting the powers of Arthur Boericke as president and general manager, by requiring most of his acts to be countersigned by the secretary-treasurer or assistant secretary-treasurer, was considered. The then treasurer was Breckenfeld, age 78, and the proposed plan contemplated the appointment by him of an assistant. The plan required the amendment of the bylaws of the company, and the minutes of this meeting show that the bylaws were then amended. The secretary-treasurer Breckenfeld immediately appointed Lane as assistant secretary-treasurer. Charles Boericke, although not present, signed the minutes of this meeting. However, neither he nor Arthur was satisfied with the Lane plan. On April 25, 1943, the very next day after the meeting, Dr. Charles wrote to Weise expressing his and Arthur's displeasure. In this

letter he stated that he wanted Weise to act as a moderator between Arthur and Lane, and to work out some modified plan whereby Arthur could still retain a position of importance in the company. He stated that he wanted a modification of the resolutions approving Lane's proposed plan and that he had the power, through the stock he owned or controlled, to accomplish this by calling a stockholders' meeting and electing a new board, and stating he intended to do this unless a plan could be worked out giving Arthur some control over the company.

No acceptable counterplan was suggested. ■ On April 27th Arthur, with the consent of Dr. Charles, decided to call a stockholders' meeting to elect a new board of directors. Arthur, who was president, general manager, director and a substantial stockholder, requested the secretary, Breckenfeld, to call a meeting of the stockholders. Breckenfeld was ill and unable to send out such notices. Purporting to act under article IX, paragraph 5, of the bylaws of the company, Arthur appointed his secretary Jeanne Hodges to send out the notices to all stockholders calling a meeting for May 11, 1943, for the purpose of electing a new board of directors. Breckenfeld agreed with Arthur that Jeanne Hodges was a proper person to send out the notices. It is this meeting, held on that day and at which a new board was elected, that appellants challenge as invalid, and which respondents contend and the trial court found was valid. The main ground of attack is that Arthur had no legal right to appoint Jeanne Hodges to send out the notices, but should have notified Lane as assistant secretary-treasurer to perform these duties. The point is without merit. Article IX, paragraph 5, of the bylaws of the company expressly required the secretary of the company to send out all notices, but, if he was unable to act, then it is provided that "such notices may be served by any person thereunto directed by the President." This paragraph of the bylaws was not one of those expressly repealed or amended at the meeting of April 24, 1943. The amended bylaws consolidated the positions of secretary and treasurer, with the new consolidated officer having the duties and functions originally conferred on the secretary and treasurer. The amended bylaws also created the new position of assistant secretary-treasurer to be appointed by the secretary with the full duties and powers of the secretary. According to Lane's

plan of reorganization, it was contemplated that this officer would be a check on Arthur as president and general manager. The amended bylaws, in the section consolidating the secretary-treasurer position, contains a provision that "any other provisions of the bylaws of this Corporation in conflict therewith are hereby rescinded." That provision obviously refers to the provisions of the old bylaws setting up the two separate offices of secretary and treasurer. There is no comparable provision in the amended bylaws where such amendments refer to the duties of the assistant secretary-treasurer. All that appears there is the provision that "Section 2 of Article IX of the original bylaws of this Corporation is hereby repealed and rescinded." Section 2 of article IX is the section giving the president the right to perform certain acts without first securing the consent of anyone. Article IX, paragraph 5, of the bylaws conferring upon the president the power to appoint any person to serve the notices calling a stockholders' meeting if the secretary could not act, was not repealed. This being so, when Arthur as president asked Breckenfeld to send out the notices and was informed that he was physically unable to do so, Arthur then, under the old and amended bylaws, had an alternative as to who should send out the notices. Under the amended bylaws he could have selected the assistant secretary-treasurer, but under the old bylaws, he could direct "any person" to send out the notices. The notices if sent out by either method would have been valid. These notices sent out by Jeanne Hodges were therefore valid notices.

▉ Appellants also attack the notices of the meeting because it is recited therein that the special meeting of the stockholders "is called by the Directors." Actually the board had not formally called the meeting, but it was called by Arthur Boericke as president, after consultation with his brother Dr. Charles, and with full approval of director Breckenfeld. Thus three of the directors who owned a total of 202 shares of the 405 outstanding, acquiesced in the calling of the meeting. Article IV, paragraph I, of the bylaws requires the directors to call special meetings of the stockholders at the request of stockholders holding one-third of the capital stock. The notices were specific as to the time, place and purpose of the meeting, and complied with sections 312 and 314 of the Civil Code. All the stockholders received seasonable and ac-

tual notice of the meeting. It is obvious, therefore, that these notices substantially complied with the requirements of the bylaws relating to the calling of stockholders' meetings. Substantial compliance with the prescribed mode is all that is required. (Fletcher, Cyclopedia of Corporations (Perm. ed.), vol. 5, p. 12, § 1998.) It follows that the notices of the meeting and the meeting held pursuant thereto were valid.

The meeting was held on May 11th as noticed. Arthur owning 79 shares, Dr. Charles owning 73 shares, Margaret Burns owning 45 shares and Jeanne Hodges owning 5 shares were present in person, and, in addition, Dr. Charles had the proxy of Dr. Garth Boericke to vote his 68 shares. Thus a total of 270 out of the total 405 shares were present. Neither Weise nor Lane was present although both had received actual and seasonable notice of the meeting. The minutes of this meeting recite that the stockholders refused to ratify the action of the board of directors in amending the bylaws at the April meeting. The amended bylaws were thus repealed. Bylaws adopted by directors are always subject to alteration or repeal by the shareholders. (Civ. Code, § 301; California Corporation Laws (1938 ed.) by Ballentine and Sterling, Jr., p. 80, § 71.) The stockholders, by appropriate action, then amended the bylaws by reducing the board of directors from six to five and then elected a new board. The minutes recite that Lane "had verbally declined to serve on the Board, preferring to devote his full time to the best interests of The Eopa Company," and it is also recited that director Miss Burns had severed her connections with the company. The new board then elected consisted of Arthur and Charles Boericke, Weise, Breckenfeld and Jeanne Hodges. The new board met immediately, accepted Breckenfeld's resignation as secretary, elected Arthur president, Dr. Charles as vice-president and secretary-treasurer, and Jeanne Hodges as assistant secretary-treasurer. As a result of these actions Arthur was restored to his former position, and Lane's connection with the company was largely severed.

Thereafter, and until August of 1943, appellant Weise participated in the company's affairs and attended meetings of the new board of directors. It was not until August 14th that he first contended that the notices for the meeting of May 11, 1943, were invalid. The evidence shows that between May and August all the parties concerned were discussing

ways and means by which the company could be put on a paying basis. On July 21, 1943, Dr. Charles wrote to Lane that Dr. Garth Boericke intended to come out from Philadelphia to discuss the problem, and asking Lane what he would do if placed in complete charge, and asking if Arthur could be fitted into Lane's plans.

The next major step taken by the parties hereto was the execution of a voting trust dated July 30, 1943, but not fully signed until August 14th. The agreement was signed by Breckenfeld, Burns, Gelinas, Lane, Garth and Charles Boericke. Arthur did not sign. By this agreement Weise was named trustee. The trust was to be irrevocable for a period of one year, and provided that during that year the trustee could vote the stock of the signatories, and that the trustee was empowered during that period to demand of the signatories their certificates of stock endorsed in blank to be held by him in trust.

Sometime between July 30th and August 10th Weise testified he had lunch with Dr. Garth and Arthur. The losses of the company were discussed, and the possibility of Arthur resigning as president and general manager and becoming a salesman was suggested. Under date of August 10, 1943, Arthur addressed a letter to the board of directors discussing the losses of the company and stating that he thought the company could be put on its feet within a year, and offering, if the stockholders thought this period too long and so desired, to resign.

On August 13, 1943, Weise and Breckenfeld as directors decided to call a special meeting of the board of directors for the next day. Weise was then of the opinion that the election of the new board on May 11, 1943, was invalid, and so he caused the notices for this meeting to be served on the members of the board of directors as such membership existed prior to May 11th. This meant that no notice was served on director Jeanne Hodges, and notices were served on Margaret Burns and Lane who were no longer directors if the election of May 11th was valid. Neither Dr. Charles nor Arthur was present. They were out of the city and had no actual notice of the proposed meeting. Notices, however, were apparently left at their offices after 5 o'clock on the afternoon of August 13th.

The old board met on August 14, 1943, Margaret Burns, Breckenfeld, Weise and Lane being present. Inasmuch as

Burns and Lane were not directors, since the election of May 11th was valid, it is apparent that only two directors—Weise and Breckenfeld—were present, and the bylaws required three to constitute a quorum.

At this meeting Weise formally informed the "old" board that in his opinion the election of the "new" board on May 11th was invalid and that the "old" board was then the only proper board of directors. The old board then "accepted and adopted the legal opinion of Mr. Weise." The old board then considered Arthur's letter of August 10th, interpreted it as an offer to resign, and accepted such resignation. Weise was then elected president, Breckenfeld's offer to resign the position of secretary-treasurer was accepted, Lane elected to that position, and certain amendments to the bylaws were adopted. Lane was then employed as general manager for an indefinite period under a written contract providing for 50 per cent of the profits as his compensation. Weise was put on a retainer basis as attorney for the company.

The trial court found that this meeting of August 14th was invalid. This finding necessarily follows from the finding that the meeting of May 11th was valid. If the May meeting was valid, the August meeting was obviously invalid.

After the meeting of August 14th Arthur and Charles acquiesced for a short period in what had there been done. They turned over control of the company to Lane. They testified that they so acquiesced because they had confidence in the attorney for the company, Weise, and when he represented that the meeting of May 11th was invalid they believed him. Arthur, laboring under the erroneous impression that the August meeting was valid, on August 20th posted a notice notifying the employees he had resigned as president and general manager, and stating that Weise was now president and Lane, general manager. Lane took over the management of the company pursuant to his contract approved at the invalid August meeting. About a month thereafter Dr. Charles and Arthur became dissatisfied with the way Lane was operating. They went to Weise and asked him to represent them. He refused, they hired their present counsel, and this action was instituted.

It is apparent that the trial court's conclusions that the stockholders' meeting of May 11th was valid and the directors' meeting of August 14th invalid were correct under

the facts and the law, unless for some reason respondents are estopped from challenging the validity of the August 14th meeting. Appellants pleaded and attempted to prove such an estoppel, but the trial court found against them on this issue. Appellants base their claim of estoppel on the evidence that the meeting of August 14th was held after respondents, with the exception of Arthur, had entered into a voting trust agreement which allowed Weise to vote their stock for one year. They also point out that discussions were had with Lane prior to August 14th looking toward his employment as general manager of the company. Emphasis is placed on the fact that on August 10th Arthur offered to resign. Their theory is that the August 14th meeting merely ratified plans already approved by everyone. Considerable reliance is placed by appellants on the fact that for a short period after the August meeting respondents acquiesced in what was there done.

It is apparent that whether there was an estoppel was a question of fact. The trial court has found against appellants on this issue. Those findings are supported. Both Arthur and Dr. Charles testified that their acquiescence was based on the legal advice given the corporation by Weise that the May 11th meeting was invalid. The trial court so found. It is apparent that when everyone to a transaction is laboring under a mutual mistake of law, acts performed in reliance on such mutual mistake, do not, as a matter of law, create an estoppel.

The appellants also urge that respondents do not come into court with clean hands, and for that reason should be denied relief. There can be no doubt that this proceeding is equitable in nature and that the ''clean hands'' doctrine is applicable. (*DeGarmo* v. *Goldman*, 19 Cal.2d 755 [123 P. 2d 1].) Whether plaintiffs are within the application of the maxim is primarily a question of fact. (*Pon* v. *Wittman*, 147 Cal. 280 [81 P. 984, 2 L.R.A.N.S. 683].)

It is appellants' thought that respondents did not come into court with clean hands because, so it is contended, they brought this action, not to establish the validity of the election, but to oust the defendants from the business, and to breach the voting trust agreement, all because, according to appellants, they refused to carry on some purportedly illegal business transactions.

 The question as to whether there has been a breach of the voting trust agreement is not involved in this action. This is an action to determine primarily who are the directors entitled to control Boericke and Runyon Company. Although the validity of the voting trust may properly be passed upon in this proceeding, matters which relate solely and exclusively to the rights of the stockholders between themselves, or between themselves and third persons, are not involved. Of course if a party comes into a court of equity with unclean hands relating to the transaction before the court, he will be denied relief. But in determining that issue the trial court can properly consider only whether the moving party has clean or unclean hands in relation to the matters properly before the court. The trial of the issue relating to clean hands cannot be distorted into a proceeding to try the general morals of the parties. To warrant denial of relief the unclean hands must relate to the transaction before the court.

 In the present case the primary question was whether the May 11th meeting was valid. No question of clean hands at all is raised in reference to that issue. If the May 11th meeting was valid, the August 14, 1943, meeting was invalid. The facts now being discussed have no relation at all to those two issues. If the August 14th meeting was invalid, respondents owed a duty to themselves and to the other stockholders to have it determined whether the acts performed at that meeting were valid or invalid. It may be that Lane has a cause for complaint against Dr. Charles, or even Arthur, but his rights, if any, against them as individuals are not involved in this action. It is apparent, therefore, that there is nothing in the record to justify the contention that in relation to the issues before the court the respondents had unclean hands.

This leaves for consideration only the holding that the voting trust was invalid. The record shows that on December 22, 1943, the trial judge caused to be entered a minute order to the effect that judgment should be rendered in favor of respondents on the questions relating to the May and August meetings, but that judgment should be entered determining that the voting trust was valid. On January 6, 1944, the trial judge caused to be entered an amended minute order, correcting the prior one "nunc pro tunc." In this amended minute order the trial court directed that judgment be entered decreeing the voting trust to be invalid. By findings entered

the next day the trial judge found that the voting trust had not been submitted to the Corporation Commissioner and that it was not in the best interests of the company. In her conclusions of law she found the voting trust to be invalid because (1) it was not submitted to the Corporation Commissioner; (2) because it was never consummated by delivery of the stock to the trustee and (3) the purpose of the voting trust was illegal. The judgment decreed the voting trust to be invalid.

The respondents have offered no argument in their briefs to support this portion of the judgment. They do contend the issue is moot because the year provided in the agreement has elapsed. This argument of respondents is without merit. The issue is by no means moot inasmuch as the agreement, if valid, constituted a contract and Weise may or may not have an action for breach of contract. (*DeGarmo* v. *Goldman,* 19 Cal.2d 755 [123 P.2d 1].) The holding that the voting trust was not consummated because the stock was not delivered to the trustee does not determine that the voting trust was illegal. The voting trust was a contract. If valid, it became binding when it was executed. The delivery of the stock was to be a future act dependent upon demand by Weise. The evidence shows Weise made such a demand but respondents countered with notices of rescission. We do not pass on the issue whether the agreement was rescinded. The trial court made no findings on that issue and the evidence is not in condition for us to make such findings. The point is that the delivery or nondelivery of the stock is a false factor on the issue of the validity of the agreement.

The finding that the voting trust was for an illegal purpose is totally unsupported by any evidence. Moreover, if it were for an illegal purpose both appellants and respondents were parties to such purpose and both would be barred from securing affirmative relief in connection therewith.

This leaves for consideration only the finding that the voting trust was not approved by the state Corporation Commissioner. Appellants contend that the law contains no requirement for such approval. Respondents have not seen fit to even discuss the question in their brief, and when the point was called to counsel's attention on oral argument counsel offered no argument to support the conclusion and made no offer to brief the point. A reading of the voting trust dis-

closes that it expressly provides that all stock pledged in the instrument should be withheld from sale and no provision was made for the issuance of voting trust certificates, or any form of document that could be sold or hypothecated. Section 321a of the Civil Code permits voting trusts but is silent as to whether approval of the commissioner must be secured. A reading of the Corporate Securities Act discloses no express provision requiring approval of voting trust agreements of this kind.

In view of respondents' attitude in reference to this phase of the appeal, and inasmuch as they have offered no argument at all in support of this portion of the judgment, it may be assumed that this portion of the judgment has been abandoned. Certainly, it is not incumbent on this court to make an exhaustive research to support this portion of the judgment when counsel have not seen fit to argue the point at all.

The portion of the judgment determining that the voting trust was invalid (par. 6) is reversed; the balance of the judgment is affirmed; both sides to bear their own costs on this appeal.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied April 14, 1945, and appellants and respondents' petitions for a hearing by the Supreme Court were denied May 10, 1945.