[Civ. No. 38356. Second Dist., Div. Five. June 13, 1972.]

AMERICAN CENTER FOR EDUCATION, INC., et al.,
Plaintiffs and Appellants, v.
SAMUEL M. CAVNAR et al., Defendants and Respondents.

**COUNSEL**

Hurst B. Amyx, in pro. per., for Plaintiffs and Appellants.

Simon, Sheridan, Murphy, Thornton & Medvene, Robert E. Hinerfeld and Richard C. Leonard for Defendants and Respondents.

**OPINION**

**KAUS, P. J.**—The American Center for Education, Inc. (ACE), is a non-profit corporation incorporated under the laws of the District of Columbia.

Its principal office has always been in the County of Los Angeles. Its purpose is to "conduct research, educational, and implementation programs and projects to safeguard and preserve this Nation's moral, spiritual, economic, political and social concepts." It enlists the support of all American citizens "who are bound to each other as brothers in the broad spectrum of American patriotism."

ACE was incorporated in January 1969. Its first operating board of directors consisted of the plaintiff Amyx, who was also ACE's president, Harry Cartlidge (executive vice president), defendant Cavnar (vice president and treasurer) and defendant Todt (vice president and secretary).

The corporation was financed by a donation in the amount of $500,000 from an unidentified "benefactor." At the time of the troubles which resulted in this litigation—May 1970—about $150,000 of the initial operating funds were left in ACE's treasury.

ACE's bylaws provide for the election, by its board, of an executive committee which is to exercise the powers of the board between board meetings. Three members of the board constitute a quorum for the transaction of board business. The same number makes a quorum of the executive committee.

At the first board meeting after incorporation Amyx, Cartlidge, Cavnar and Todt were elected members of the executive committee.

In April 1970, Cartlidge resigned all of his offices, which left Amyx, Cavnar and Todt as the only directors and members of the executive committee. The bylaws provide for a maximum of seven directors; however Amyx, Cavnar and Todt were not even able to agree on a replacement for Cartlidge. The question of bringing the board up to its authorized strength of seven apparently never even arose.

Differences between Amyx on one side and Cavnar and Todt on the other, which had been festering for some time, came to a head on May 15, 1970 in Amyx' office.[1] Todt and Cavnar claim that they convened a meeting of the executive committee for the purpose of removing Amyx from all of his offices, but that Amyx left the room. Cavnar and Todt then voted to remove Amyx as president, director and member of the executive committee and elected the defendant Bob Davies to fill the unexpired term of Amyx as director. Cavnar was elected to replace Amyx as president.

---

[1] No particular purpose would be served by detailing the charges and counter-charges leveled by the parties against each other or the various bizarre tactics employed in the prosecution of their intra-corporate war.

Later during the afternoon of May 15, there was a donnybrook at the offices of ACE's bank, where the parties attempted to persuade the manager to recognize their respective claims to the right to dispose of ACE's funds. In connection with this summit meeting the executive committee may or may not have met again to fire Amyx and elect Davies once more. In any event Cavnar, Todt and Davies, as the purported new board, met again at 6 p.m. that evening. Cavnar resigned as president and Todt as secretary. Todt was then elected president, Cavnar treasurer and Davies secretary. Justifiably uncertain about the legality of what had taken place, Todt, Cavnar and Davies then noticed a board meeting for May 25, 1970, "for the purpose of ratifying certain action by the Executive Committee, including, without limitation, the removal of Hurst B. Amyx as President, Director, and member of the Executive Committee of the Corporation, the action of the Board of Directors at its special meeting, upon waiver of notice, on 15 May 1970, for the election of new officers and directors. . . ." Though served with a copy of the notice of the May 25 meeting, Amyx did not attend. The meeting took place and the actions taken on May 15 were duly ratified by Cavnar and Todt, with Davies abstaining.

On June 24, 1970, Amyx sued.[2] The complaint is in two causes of action. The first purports to be based on section 2236 et seq. of the Corporations Code. By challenging the election of Davies, it seeks to have the court invalidate the purported ouster of Amyx. The second cause of action sounds in fraud and claims, essentially, that Amyx was ousted as a result of a conspiracy between Cavnar and Todt. The conspirators, by various fraudulent representations, first caused Amyx to procure the resignation of Cartlidge, then staged the allegedly illegal intra-corporate proceedings of May 15 and May 25 in order to get control of the corporation and its assets. The relief demanded by the complaint is a declaration to the effect that Amyx' ouster and Davies' election were illegal, the removal of Cavnar and Todt from all their corporate offices, an accounting to the corporation and ancillary injunctions. A preliminary injunction was sought and supported by various declarations. The defendants demurred, filed motions to strike and for a summary judgment and cross-complaint against Amyx.[3] The cross-complaint prays alternatively for an order directing another meeting of ACE's board or the ouster of Amyx from any office with ACE.

After Amyx answered the cross-complaint the pending law and motion matters came on for hearing. Eventually an order was made as follows:

[2]ACE was named as a plaintiff. It also appeared as a cross-complainant later on. For the time being we shall ignore ACE's status as a litigant.

[3]Defendants also filed an answer. (See Code Civ. Proc., § 472a.) The motion for summary judgment was supported and opposed by lengthy affidavits.

1. The preliminary injunction was denied. 2. The demurrer to the first cause of action was overruled. 3. Defendants' motion for summary judgment was granted as to the first cause of action. 4. Defendants' motion to strike was denied. 5. Defendants' demurrers to the second cause of action were sustained, without prejudice to refiling under a new case number.[4]

A judgment was then entered. It denied any relief to Amyx, dismissed the second cause of action without prejudice, declared that there was no triable issue with respect to Amyx' first cause of action asserted under section 2236 et seq. of the Corporations Code, that he ceased to occupy any corporate office with ACE on May 25, 1970, and that since his removal Cavnar and Todt continued as officers, Todt as president, Cavnar as treasurer.

It will be noted that the judgment makes no specific provision with respect to the contested election of Davies.

## DISCUSSION

There are several reasons why the summary judgment on the first cause of action must be reversed.

Turning first to the validity of the election of Davies, it is apparent that if he was elected, it happened either on May 15, at the first purported meeting of the executive committee in Amyx' office, or on May 25, at the purported board meeting of that day. Defendants do not contend that if the election at the first executive committee meeting of May 15 was invalid, its repetitions at the second executive committee meeting of that day, or at the board meeting that evening were any better.

As far as the May 15 meeting is concerned, it seems clear to us that there is a triable issue of fact on whether or not the executive committee validly met. Amyx' declaration concerning the corporate infighting of that day is to the effect that at about 3:40 p.m. Cavnar and Todt entered his office with two policemen, sat down and that Cavnar said something about a meeting. As soon as Cavnar started speaking, Amyx rose from his chair, said "just a minute" as he rounded his desk and was out of the room within two seconds. Declarations filed by and on behalf of Cavnar and Todt do not deny this detailed description of what happened, but state generally that there was a meeting.

---

[4]This ruling by the court refers to section 430, subdivision 5, of the Code of Civil Procedure—several causes of action improperly united.

While we have found no cases with respect to executive committee meetings which start, as it were, out of the blue, such law as there is on the subject concerning directors' meetings is summarized in 2 Fletcher, Cyclopedia of the Law of Private Corporations (perm.ed.) section 422, page 277 as follows:

"A director cannot be trapped into attendance at a directors' meeting, against his will, by the directors going to his office, which was the office of the company, where he left the office in order to break up a quorum as soon as he realized that corporate action was to be taken and a meeting held. [Footnote omitted.] So, to hold that certain directors could form a quorum by coming upon another in a room, or in the street, and, despite the protests of that other, could, by merely declaring the body of persons gathered together to be a meeting, actually give it that complexion, would be illegal. [Footnote omitted.] But this rule does not apply where the director not only attends but remains and participates in the proceedings during the entire meeting. [Footnote omitted.]"

Having these principles and the authorities cited in Fletcher in mind, the trial court could not have decided on motion for summary judgment that there was a meeting of the executive committee on May 15. Indeed the declaration in the judgment to the effect that Amyx was ousted as of May 25 supports the conclusion that no such determination was made.

The same reasons which militate against a holding that there is no triable issue on whether or not there was a May 15 meeting of the executive committee that elected Davies, compel a similar holding with respect to the alleged ouster of Amyx on that day.

Moreover, with respect to that issue, there is a more important reason why Amyx could not have been ousted by the executive committee on May 15.[5]

As we interpret the bylaws of ACE, the one board power which was not delegated to the executive committee was the power to remove duly elected directors.

As far as the articles of incorporation of ACE are concerned, they say nothing about an executive committee. They merely provide that "any director may be removed with or without cause by a majority vote of a properly constituted quorum of the board of directors." Section 1 of

---

[5]As already noted, no contention is made that if Amyx was not validly ousted at the first of the May 15 meetings, there was an effective ouster at any time before the May 25 board meeting.

article VIII of the bylaws then provides that the board may create an executive committee which "shall exercise the powers of the board of directors in the interim between meetings of the directors, with general power to discharge the duties of the board of directors, except as such power from time to time may be limited by the Board."

At its first meeting on January 21, 1969, the board did, after voting salaries to Amyx, Cavnar and Todt and a handsome retainer to their Washington, D.C., attorney, create an executive committee and provide that it should "exercise full powers of the Board of Directors in the interim between meetings of the Directors, with general power to discharge the duties of the Board of Directors and that the Executive Committee shall execute all powers delegated to it by the By-Laws of this corporation . . ." Of course the board had no power to delegate any board function which the bylaws prohibited it from delegating; nor do we interpret the January 21, 1969, resolution as attempting to do any such thing.

The question whether the board's power to remove directors was delegable to the executive committee cannot, however, be answered by reference to section 1, article VIII alone. Article IV, section 2 of the bylaws provides as follows:

"Any member of the board of directors may resign by delivering his written resignation to the Secretary of the Corporation, and any member of the board may be removed at any time with or without cause by action of the board. In case of any vacancy in the board of directors through death, disability, resignation, removal, or other cause, the remaining directors may elect his successor, who shall take office immediately and hold office for the unexpired portion of the term of the director to whose place he is elected. The board of directors serving at any time shall have the right in its own discretion to elect other persons to the board of directors, subject to the foregoing limitation as to maximum and minimum. *The power to fill vacancies in the board may be delegated to the Executive Committee, and the action by the Executive Committee in filling a vacancy shall be as effective as if taken by the board of directors."* (Italics added.)

█ It is generally accepted that corporate bylaws are to be construed according to the general rules governing the construction of statutes and contracts. (18 C.J.S., Corporations, § 183; 18 Am.Jur.2d, Corporations, § 168; cf. *Casady* v. *Modern Metal etc., Mfg. Co.,* 188 Cal.App.2d 728, 732-733 [10 Cal.Rptr. 790]; *Bornstein* v. *District Grand Lodge No. 4,* 2 Cal.App. 624, 627-628 [84 P. 271].)

█ Comparing the general provisions of the bylaws relating to the

potential powers of the executive committee (art. VIII, § 1), with those relating to the power to remove directors and to fill vacancies on the board (art. IV, § 2) particularly with respect to the extent to which the executive committee may be designated to share those powers, it is evident that the article IV, section 2 provisions are more specific than the former. Therefore, in case of any inconsistency, they control. (*Continental Cas. Co.* v. *Zurich Ins. Co.,* 57 Cal.2d 27, 35 [17 Cal.Rptr. 12, 366 P.2d 455].)

Turning to article IV, section 2 we find that it specifically permits the board to delegate to the executive committee the power to fill vacancies. As far as any delegation of the power to remove board members is concerned, nothing is said. If it had really been the intention of the framers of the bylaws that the board could validly delegate all of its powers— including but not limited to the removal and election of directors—to the executive committee, the last sentence of article IV, section 2 would have been quite unnecessary. It is, however, established by abundant authority that a contract must be interpreted "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; *Mickle* v. *Sanchez,* 1 Cal. 200, 202; *Colonial Savings & L. Assn.* v. *Redwood Empire Title Co.,* 236 Cal.App.2d 186, 192 [46 Cal. Rptr. 16]; *Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 310 [266 P.2d 856]; *Cole* v. *Low,* 81 Cal.App. 633, 637 [254 P. 676].) Obviously no purpose would have been served by giving the board specific authority to delegate the power to fill board vacancies to the executive committee, if it had not been assumed that but for that specific authority to delegate, none existed with respect to the removal or election of board members.

This interpretation of the bylaws is further aided by the application of the familiar maxim *"expressio unius est eclusio alterius*[.]*"* (Cf. *Jones* v. *Robertson,* 79 Cal.App.2d 813, 816 [180 P.2d 929].) Thus the provision concerning the power to delegate the election of board members to existing vacancies, implies the denial of the power to create such vacancies by the removal of board members.

It is therefore our conclusion that Amyx could not have been removed by the executive committee on May 15, even if there were no triable issue whether it ever met that day.

This brings us to the question whether the judgment may be upheld

on the basis of the undisputed events concerning the May 25 meeting.[6] The bylaw provisions with respect to board meetings read as follows:

"The board of directors shall hold an annual meeting on the 21st day of January at an hour and place to be determined by the board.

"The board of directors shall hold such other meetings at times and places and in accordance with written notice as from time to time may be determined by the board, and, in addition thereto, the President of the corporation may call a meeting of the board upon 24 hours' notice delivered either by mail, personally, or by telephone. Any director may waive any notice required to be given to him by law or under these By-Laws, and by attendance at any meeting he shall be deemed to have waived notice thereof."

It is, of course, the basic position of defendants that in view of the valid removal of Amyx and the equally valid election of Davies on May 15, the May 25 board meeting is so much gilding of the lily. Since we cannot agree with their premise, we must inquire further.

We have already held that based on the record before us Amyx was not ousted on May 15. In the absence of any special meeting of the board before January 21, 1971, the question of his removal would not arise until the annual meeting of that day. The record discloses Amyx' stipulation that he had no intention of calling a board meeting at which he was bound to be removed. The superior court's judgment was clearly based on its view that the May 25 board meeting was valid regardless of what happened on May 15. Its reasoning—expressed in its minute order—was that its validity derived from the fact that Amyx, being disqualified on the subject of his own ouster, was a nonperson as far as his power to call a meeting was concerned; nor could his presence be counted to make up the necessary quorum of three.[7] In its holding the court relied on *Hotaling* v. *Hotaling*, 193 Cal. 368, 377 [224 P. 455, 56 A.L.R. 734] and *Pennington* v. *Pennington Sons*, 27 Cal.App. 57, 59-60 [148 P. 947].

Disregarding the question whether the cause of disqualification involved in *Hotaling*—personal, financial interest in a corporate transaction—even applies to Amyx' position vis-à-vis the agenda of a board meeting con-

---

[6]It is again noted that, perhaps through oversight, the judgment makes no express disposition of the disputed issue whether Davies was elected on May 15, on May 25, or at all.

[7]Whether or not there was a quorum of three at the May 25 meeting, if that meeting was properly called, depends, of course, on the validity of Davies' election of May 15.

vened to oust him, the fact is that California corporation law is not the same today as it was when *Hotaling* and *Pennington* were decided. The law is now embodied in section 820 of the Corporations Code, which is generally to the effect that directors are not disqualified from voting or having their votes counted if certain conditions are met. (2 Fletcher, Cyc.Corp. (perm.ed.) § 426.1.)

It therefore does not follow from the facts disclosed by the record that the May 25 board meeting was called in accordance with ACE's bylaws. Absent the unlikely event that Amyx, as president, would call a meeting in the meanwhile, the situation was simply that Todt and Cavnar had to curb their impatience to get rid of him until the January 1971 meeting. In the meanwhile, of course, such remedies as the law provides—for example, proceedings under section 811 of the Corporations Code—were open to them. Indeed one of the items of relief requested by them in their cross-complaint was, as noted, a court-convened meeting of the board.

Finally we must mention the question which may eventually present itself, whether the first cause of action was in fact based on section 2236 of the Corporations Code, to the extent that it challenged the ouster of Amyx as distinguished from the election of Davies. The section reads as follows: "Upon the filing of an action therefor by any shareholder, the superior court shall try and determine *the validity of any election or appointment of any director* of any domestic corporation, or of any foreign corporation if the election was held or the appointment was made in this State. In the case of a domestic corporation the action shall be brought in the county in which the principal office of the corporation is located. In the case of a foreign corporation the action shall be brought in the county in which the corporation has its principal office in this State or in which the election was held or the appointment was made." (Italics added.) Section 2237 then provides for certain accelerated proceedings to try cases brought under section 2236.[8]

It will be noted that section 2236 speaks of actions involving "the validity of any election or appointment of any director." Clearly the validity, as such, of the attempted ouster of Amyx does not come within the purview of the section. To be sure if the validity of the election of Davies depended solely on the efficacy of the ouster of Amyx that ouster would have to be scrutinized (*Columbia Engineering Co.* v. *Joiner,* 231 Cal.App.2d 837, 842-849 [42 Cal.Rptr. 241]), but that is not the case.

---

[8]The proceedings allowed by section 2237 of the Corporations Code must be distinguished from the motion for a summary judgment granted here. Section 2237 merely provides for a very early trial, not for a trial on affidavits or declarations.

Whether Davies was elected on May 15, or on May 25, there were plenty of vacancies on the board to accommodate his presence, without the necessity of removing Amyx. Section 2236 was, therefore, an inappropriate vehicle for raising the question of Amyx' ouster.

Be that as it may, the parties submitted the issue of Amyx' expulsion on the motion for summary judgment. Under the circumstances it can make no difference that, had the motion been denied, the summary proceedings provided for by section 2237 would not have been available. Our only reason for making the point at all is that the dismissal of the second cause of action was apparently based on the theory that a statutory cause of action for summary relief under section 2236 et seq. could not be joined with the plenary second cause of action. Whatever may be the merits of that proposition when the summary cause of action is to be disposed of by a full, though speedy, hearing, it clearly did not apply here after the court held—erroneously, to be sure—that as far as the first cause of action was concerned, there was no triable issue to hear, speedily or more sedately. The court should have ruled on the demurrer to the second cause of action. The dismissal thereof was error. The judgment must, therefore, be reversed. Obviously a lot of water has flowed under the corporate bridge while this case was on appeal. Needless to say, on remand, justice demands the utmost liberality in permitting amendments or supplements to the pleadings.

■ This brings us to the last point, namely the position of ACE as a litigant. Our attention has been particularly focused on that issue because Amyx, while originally represented by counsel, has acted as his own attorney in connection with a motion for a new trial and this appeal. He also purported to sign the notice of appeal on behalf of the corporation. (Cf. *City of Downey* v. *Johnson,* 263 Cal.App.2d 775, 780-782 [69 Cal.Rptr. 830].) Obviously, while he can represent himself, he cannot, as a layman, represent the corporation. (*Roddis* v. *All-Coverage Ins. Exchange,* 250 Cal.App.2d 304, 311 [58 Cal.Rptr. 530].)

The question—on which we received no help from anyone—then arose whether the corporation was a necessary party to this appeal. We have concluded that it is not.

The cases which shed the most light on this issue are *Colburn Biological Institute* v. *DeBolt,* 6 Cal.2d 631 [59 P.2d 108], and *Boericke* v. *Weise,* 68 Cal.App.2d 407 [156 P.2d 781]. Both involve actions under former section 315 of the Civil Code. In *Colburn* the court held that it was not improper for the plaintiff to sue in behalf of himself and the corporation, because the corporation was a "proper party to the action if not a necessary

one and, since the action is one to determine who is in control of the corporation, it cannot be material whether it is joined as a party plaintiff or defendant, . . ." (*Id.*, at p. 642.) In *Boericke,* the issue was the validity of a corporate election, and the court, reciting the procedural facts of that case, noted that "the corporation put in but a *pro forma* appearance." It then listed individuals as the "real and only" defendants, omitting the corporation. (*Id.*, at p. 409.)

Here, as in *Colburn,* the issue is whether plaintiff or defendants rightfully control the corporation. Under these circumstances the corporation is not in a position to represent its position in court, for the very purpose of the action is to determine who speaks for the corporation. Thus any appearance by the corporation is indeed, as found in *Boericke,* pro forma, and we conclude that the issues raised by the individual parties on appeal may be disposed of without the appearance of the corporation in this court.

The judgment is reversed.

Stephens, J., and Aiso, J., concurred.

On June 26, 1972, the opinion was modified to read as printed above.