Henry G. STORRS, Appellant,

v.

LUTHERAN HOSPITALS AND HOMES SOCIETY OF AMERICA, INC., d/b/a Fairbanks Memorial Hospital, Appellee.

No. 4564.

Supreme Court of Alaska.

April 4, 1980.

---

A. Lee Petersen, Anchorage, for appellant.

David H. Call, Call, Haycraft and Fenton, Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Justice.

This case concerns the suspension of a doctor's hospital staff privileges. We hold that Dr. Storrs, the appellant, was entitled to receive procedural due process from Fairbanks Memorial Hospital, appellee, in the hearings conducted by it to determine whether the suspension of Storrs' privileges was justified. We also hold that the hospital failed to follow its own by-laws in suspending him. Consequently, we remand the case to the superior court with instructions to remand to the hospital's Judicial Review Committee.[1]

On March 21, 1977, Keith B. Gianni, M.D., Chief of Staff, Fairbanks Memorial Hospital, sent Storrs a letter stating that Storrs' "entire hospital privileges are hereby suspended under authority of Article VII, Section 2" of the hospital's by-laws. The suspension came shortly after one of Storrs' patients died of post-operative complications.[2] It was done because it was "in the best interest of patient care in the hospital."[3]

1. On December 27, 1979, we entered an order remanding this case. This opinion explains the reasons for our remand.

2. In the record, this case is referred to as No. 025–466. It involved a liver biopsy operation.

3. Article VII, Section 2[A], of the by-laws gave the Chief of Staff authority to summarily sus-

On March 22, 1977, Storrs sought a temporary restraining order and injunctive relief in a Fairbanks superior court. Following a hearing, the court denied the request on condition that the hospital hold a hearing within a short period.

Before the hearing, the parties stipulated to ground rules for conducting it. Gianni would present the case for the medical staff, and participate in the decision of the Judicial Review Committee [JRC]. The parties stipulated that the JRC would consist of all members of the hospital's Executive Committee[4] and Credentials Committee.[5]

On March 30, 1977, the JRC held a hearing to determine if the summary suspension was justified based upon Storrs' handling of the operation referred to in the summary suspension, and another case where Storrs allegedly used a drug improperly.[6]

Storrs' counsel was permitted to voir dire each of the JRC members.[7] Gianni admitted that Storrs' summary suspension had influenced him, although he felt that he might change his mind based upon evidence presented at the hearing. Dr. Doolittle stated that, based on his review of the case before and after the Executive Committee meeting, he had made a determination already and recommended that Storrs' privileges be withdrawn. He "suspect[ed] that that reflects prejudgment." Additionally,

Doolittle presented the summary of the case relating to the improper use of drugs.[8]

The hospital called several witnesses to present its side of each case. The following procedure was generally used: Gianni or the hospital's counsel would question a witness; Storrs or his counsel would cross-examine the witness; committee members were allowed to ask the witness questions; and finally both sides were given the opportunity to ask the witness additional questions. Storrs was allowed to testify in a narrative fashion concerning his side of each case.

On April 7, 1977, the JRC rendered a written decision setting forth its findings and orders. The JRC found that the summary suspension by Gianni was justified based on Storrs' handling of the two cases. The decision restricted Storrs' privileges in various respects,[9] but it did not totally suspend his privileges.

On April 15, 1977, Storrs appealed the JRC decision pursuant to Paragraph 15 of the stipulation entered between Storrs and the hospital. On May 13, a hearing was held before the hospital's Appellate Review Committee [ARC]. The ARC consisted of five doctors practicing in Fairbanks who were appointed by the Lutheran Hospitals and Homes Society of America. At the beginning of the proceeding, the chairman of the ARC stated:

pend clinical privileges in the best interest of patient care. This summary suspension may be appealed to the medical staff's Executive Committee (Art. VII, § 2[B]).

4. The members of the Executive Committee were Drs. Gianni, Wells, Ream, De'ak, Heilman, Murphy, Doolittle, and Ribar. Ribar did not attend the JRC hearing. Murphy attended a portion of the JRC hearing.

5. The members of the Credentials Committee were Drs. Kinn, Worrell and Ream. Kinn did not attend the JRC hearing.

6. In case no. 020–421, Storrs allegedly administered the drug Haldol to a patient suffering from delirium tremens. According to testimony at the JRC hearing, this caused cardiac arrest and permanent damage to the patient's central nervous system.

7. Storrs' counsel expressed the view that due process required an impartial tribunal. For that purpose, he asked the members questions.

8. Other members of the Committee had previously reviewed Storrs' performance but stated that they could be impartial.

9. The following conditions were placed on Storrs' privileges: (1) he could not perform liver biopsies; (2) he could not perform emergency surgeries or treat patients suffering from shock or delirium tremens without approval and supervision; (3) his hospital admissions had to be reviewed; (4) disagreements between him and the approving physician would be resolved by the chairman of the department in question; (5) these restrictions also applied to cases in which he was the consulting physician; and (6) he was required to obtain a psychiatric evaluation.

[T]he purpose of this meeting is to review the transcripts, exhibits, findings, and decision of April 7, 1977, of the Judicial Review Committee in the summary suspension of the medical staff privileges of Henry Storrs, M.D. .Dr. Storrs has appealed that decision pursuant to Article VIII, Section 1B of the Medical Staff By-laws of the Fairbanks Memorial Hospital. The Appellate Review Committee shall limit its consideration of these proceedings to the review of the record, testimony and decisions from the hearing before the Judicial Review Committee. Likewise, arguments by the parties or the counsel shall be limited to the record.[10]

Storrs presented his version, confining his argument to the record before the JRC. Then Gianni presented the hospital's version. He introduced matters extraneous to the JRC record. First, he stated that four other cases concerning Storrs were being investigated and that "a high degree of suspicion had been raised that Dr. Storrs had acted inappropriately." Second, he stated that the JRC decision was unworkable because none of the surgeons in the Surgical Department were willing to supervise Storrs in the operating room; all members of the Department of Medicine, except two interns, also refused to supervise Storrs; and although a few members of the gynecology staff were willing to supervise gynecological surgery, Gianni stated that "this shortly will get old."

On May 14, 1977, the ARC entered its decision. It concurred in the JRC's finding that the suspension was justified, but modified that decision so as to withdraw all of Storrs' hospital privileges. Subsequently, on October 4, the ARC submitted a written opinion detailing the reasons for its decision.[11] That opinion stated that they found the JRC decision was unworkable because: (1) supervision would not safeguard patients from future harm; (2) most of the members of the staff refused to supervise Storrs; and (3) supervision would constitute an unreasonable burden on the members of the staff. Next, Storrs appealed the ARC decision to the Society's Governing Board. On May 19, 1977, the Executive Committee, acting for and on behalf of the Board of Directors, affirmed the ARC's decision.

On November 2, 1977, Storrs returned to superior court and filed a supplemental and amended complaint seeking injunctive relief, compensatory damages, and punitive damages. On October 11, 1978, the hospital filed a motion for summary judgment. A hearing was held on the motion, and on December 18, 1978, the trial court entered a memorandum decision granting the hospital's motion for summary judgment. Thereafter, the hospital moved for an award of attorney's fees and costs. The superior court awarded attorney's fees of $18,000.00 and costs of $2,996.54, for a total judgment of $20,996.54.

Storrs filed a notice of appeal to this court and contends that: (1) he was denied procedural due process by the hospital; (2) the hospital failed to follow the procedures required by its by-laws for suspension of a doctor's privileges; (3) the summary suspension should not have been granted without a showing of immediate and irreparable hardship; (4) the superior court erred in basing its decision to grant the hospital's motion for summary judgment in part on materials not contained in the administrative record; and (5) the superior court abused its discretion in awarding attorney's fees to the hospital.

## PROCEDURAL DUE PROCESS

Storrs asserts that he was entitled to procedural due process at the JRC and ARC hearings. Assuming that he was so entitled, Storrs argues that he was denied due process because: (1) the JRC was not an impartial tribunal; (2) he was not timely and adequately informed of the nature and

10. The stipulation entered into by the parties on March 28, 1977, also stated that the "decision of the medical staff shall be based upon the transcript of the JRC hearing and the evidence offered and received at that hearing."

11. The reasons were given by the ARC because this court, on denying Storrs' petition for review, made such a requirement.

cause of the accusation; and (3) the ARC's decision was based on evidence not presented at the JRC hearing.

■ The hospital concedes that Storrs was entitled to procedural due process. We agree. Although Fairbanks Memorial Hospital is not a public hospital, we hold that it is a quasi-public hospital because it is the only hospital serving the community, the construction of the hospital was funded in significant part by state and federal grants, and over twenty-five per cent of the funds received for hospital services comes from governmental sources. Consequently, we hold that the hospital cannot violate due process standards in denying staff privileges for the reasons explicated in the following cases: *Peterson v. Tucson General Hospital, Inc.*, 114 Ariz. 66, 559 P.2d 186, 191 (Ariz.App.1976); *Anton v. San Antonio Community Hospital*, 19 Cal.3d 802, 140 Cal. Rptr. 442, 446, 567 P.2d 1162, 1168 (1977); *Silver v. Castle Memorial Hospital*, 53 Haw. 475, 497 P.2d 564, 571 (1972), *cert. denied*, 409 U.S. 1131, 93 S.Ct. 936, 35 L.Ed.2d 264 (1973); *Greisman v. Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817, 824–25 (1963).

The hospital argues, however, that Storrs was provided procedural due process. Although we find it laudable that so many doctors were willing to provide time to control the quality of medical care, and we think that, for the most part, the procedures followed by the hospital were exemplary, we must hold that the review process was deficient.

Storrs contends that due process was violated because the decision maker was not impartial. He points out that Gianni, as Chief of Staff, summarily suspended Storrs, presented the case against him, was a witness against him, and was a voting member of the seven-person JRC. Additionally Doolittle, a voting member of the JRC, admitted prejudgment. He also testified as a witness and had previously recommended that Storrs' privileges be suspended. Murphy, a member of the JRC who attended a portion of the hearing, had also previously recommended the suspension of privileges.

■ Storrs, however, has waived his right to object to this basic guarantee. As discussed previously, Storrs and his counsel entered into a written stipulation with the hospital which delineated the procedures to be followed at the hearings. The stipulation provided the names of the doctors who were to participate as JRC members, including Gianni, Doolittle and Murphy. Without objection, Storrs and his counsel signed this stipulation. Moreover, at the JRC hearing, Storrs' counsel conducted a voir dire of the committee members to be sure that the hearing would be "decided by an impartial tribunal." Following the voir dire, Storrs' counsel did not object on the ground that the committee could not be impartial. Under these circumstances, we hold that Storrs cannot raise this argument on appeal,[12] because of both the stipulation and his failure to object at the hearing.[13]

---

12. If this point was not waived, we would find that due process had been violated. We have stated:

 An impartial tribunal is basic to a guarantee of due process. . . . [T]he scope of review to assure due process must include a "review to assure that the trier of fact was an impartial tribunal."

 *In re Robson*, 575 P.2d 771, 774 (Alaska 1978). We think that when, as in the present case, the functions of investigating, prosecuting, and judging have been combined in the same person, due process has been violated. *See Hoberman v. Lock Haven Hosp.*, 377 F.Supp. 1178, 1186 (M.D.Pa.1974); *Taylor v. New York City Transit Authority*, 309 F.Supp. 785, 788 (E.D.N. Y.), *aff'd*, 433 F.2d 665 (2d Cir. 1970); *Burhoe v. Whaland*, 356 A.2d 658, 659 (N.H.1976).

13. In *Alaska v. Burke*, 16 Alaska 410 (D.C.Alaska 1956), the court noted that the general rule that objections must be made at trial to preserve the point on appeal did not apply to administrative determinations because they were not courts of record. This opinion is clearly against the modern trend in administrative practice and procedure and will not be followed by this court, at least when, as here, a complainant with the assistance of counsel has had an ample opportunity to urge his objections at the administrative level. *Lakeside Community Hosp. v. Tahoe Regional Planning Agency*, 461 F.Supp. 1150, 1158 (D.C.Nev.1978) ("It is the general rule that it is necessary to bring the alleged disqualification of a member of an administrative board to the attention of the board before its decision for the point to be assertable in a court review of the proceed-

Storrs also argues that due process was violated because he was not timely and adequately informed of the nature and cause of the accusation against him. The basis for this argument is apparently the fact that the JRC hearing "was held five days after Dr. Storrs first was informed with any specificity, even orally, of the charges against him." Consequently, he asserts that he could not prepare an adequate defense.

This argument is fallacious. First, Storrs himself requested the expedited hearing, and second, the written stipulation provided notice that the "issue to be considered at the hearing will be, was Dr. Gianni justified [in suspending Storrs] based upon Storrs' handling of . . . Case Numbers 025–466 and 020–421."

Finally, Storrs contends that due process was violated because the decision of the ARC was based in part on information presented by Gianni which was not adduced at the JRC hearing. Specifically, in support of Gianni's argument that the JRC decision permitting Storrs to perform certain procedures with supervision was unworkable, Gianni presented evidence that members of the Departments of Surgery, Medicine and Obstetrics and Gynecology refused to supervise Storrs. Furthermore, Gianni stated that other cases were being investigated, which created a high degree of suspicion that Storrs had acted improperly. The hospital concedes that Gianni brought up matters not presented at the JRC hearing. We hold that presentation of these extraneous matters violated the parties' agreement, consequently it is not necessary to consider whether it violated due process guarantees.

ings"). In the closely related context of arbitration, we have stated:

A party may not obtain a second hearing by silently collecting his objections for the contingency of a loss in the first one. "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection."

Regarding the scope of administrative review,[14] it has been stated:

The general legal principles which apply to appeals from lower to higher courts do not apply to administrative review of administrative determinations. The scope and nature of an administrative appeal or review must be determined by the provisions of the statutes and ordinances which authorize them.

*Messer v. Snohomish County Board of Adjustment*, 19 Wash.App. 780, 578 P.2d 50, 56 (1978) (citations omitted). Since there are no statutes or ordinances which delineate the scope of administrative appeal in this situation, we must determine the scope of review from the hospital's by-laws and the stipulation entered into by the parties. Although the by-laws do not specifically state the scope of review by the ARC, the stipulation of the parties provides:

The decision of the governing body or its committee will be rendered within ten days after receipt of the transcript of the JRC hearing, and shall be based on the evidence received at that hearing.

Thus, the ARC scope of review is limited to consideration of the facts adduced at the JRC hearing. Although the JRC decision granted Storrs some privileges, the ARC withdrew all his privileges because of the reason advanced by Gianni: that the JRC decision was unworkable. Additionally, the introduction of these adverse materials without notice deprived Storrs of the opportunity to meet and rebut them.[15] Thus, it is clear that introduction of this additional evidence outside of the JRC hearing was contrary to the parties' agreement and was prejudicial to Storrs' case.

*Alaska State Housing Authority v. Riley Pleas, Inc.*, 586 P.2d 1244, 1248 (Alaska 1978) (citation omitted).

14. Both parties agreed that the decision of the JRC should be treated as an administrative decision and that the review of that decision should be treated as a review of an administrative decision.

15. *See Ralpho v. Bell*, 569 F.2d 607, 628 (D.C. Cir.1977).

## THE BY–LAWS

Storrs argues that this case must be remanded because the JRC failed to make a finding that he was grossly negligent in his patient care, as required by the hospital by-laws. In suspending physician privileges, a hospital must conform to its by-laws.[16] Storrs was granted hospital privileges under article 11, subsection 2(3), of the by-laws, a grandfather provision.[17] According to that subsection, "privileges shall not be reduced except for proven gross negligence." The record is devoid of any allegation or finding of gross negligence. Thus, Storrs' privileges could not be removed by the hospital because it failed to follow its own by-laws.

The hospital makes no argument that it applied the gross negligence standard. It argues, however, that this provision in the by-laws is not controlling. It asserts that the provision contained in article VI banning reduction of privileges "except for proven gross negligence" was adopted in 1968, while the summary suspension provision contained in article VII was adopted in 1974. The hospital argues that the later adopted provision controls because there is a conflict.[18]

We reject the hospital's argument for two reasons. First, the set of by-laws submitted at the JRC hearing contained both articles VI and VII and indicates that they were both adopted on October 5, 1973.[19] Even assuming that article VII was adopted after article VI, there is no conflict between the two provisions. The rules of contract interpretation apply to the interpretation of by-laws.[20] With regard to contract interpretation, we have stated:

> We are not inclined to approve an interpretation of a contract which creates conflict among its provisions. Wherever possible, repugnant portions of a contract must be harmonized.

*McBain v. Pratt*, 514 P.2d 823, 828 (Alaska 1973) (footnote omitted). These two provisions can be easily harmonized. A doctor, granted privileges by the "grandfather rights" provision, could not be suspended absent "proven gross negligence;" a doctor subsequently admitted could be suspended under the provisions of article VII without such a showing.

We hold that the hospital erred in suspending Storrs' privileges without a finding of gross negligence as required by its by-laws. We remand this case for a determination of whether the summary suspension was justified because Storrs' performance in case numbers 025–466 and 020–421 was grossly negligent.

## THE SUMMARY SUSPENSION

In the present case, Gianni summarily suspended Storrs' privileges under article VII, section 2, of the by-laws because he was "convinced this action must be taken immediately in the best interest of patient care in the hospital." Gianni did not take the action lightly. He was aware of its importance and "profound effect." He deliberately collected both facts and opinions before reaching his decision. In view of the

**16.** *Shulman v. Washington Hosp. Center*, 222 F.Supp. 59 (D.D.C.1963); *Peterson v. Tucson General Hosp., Inc.*, 559 P.2d 186, 189 (Ariz. App.1976); Note, *Denial of Hospital Staff Privileges: Hearing and Judicial Review*, 56 Iowa L.Rev. 1351, 1360 (1971).

**17.** The section provides in part:
All physicians who are members of the Hospital Staff at the time of the adoption of these bylaws shall be appointed to the new staff with all of the medical, obstetrical and surgical privileges held in the past as shown by records and experience.

**18.** *See American Center for Education v. Cavnar*, 26 Cal.App.3d 26, 102 Cal.Rptr. 575, 580–

81 (1972); *New England Trust Co. v. Penobscot Chem. Fibre Co.*, 142 Me. 286, 50 A.2d 188, 192 (1946).

**19.** The only indication that the articles were adopted at different times was an affidavit by June Thomas which was submitted to the superior court. This affidavit was not part of the administrative record and, thus, we will not consider it.

**20.** *See American Center for Education, supra* note 18: "[B]ylaws are to be construed according to the general rules governing the construction of . . . contracts."

fact that the JRC hearing took place shortly after the summary suspension, we find no error in the procedure for imposition of the summary suspension.[21]

 This procedure was approved in *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301, 307–09 (E.D.Pa.1970). The *Citta* court initially weighed the competing interests of the doctor and the hospital in deciding whether a hospital could summarily suspend a doctor's privileges without a hearing. It concluded:

> We consider it appropriate for the Department head to have the power to restrict the privileges of physicians under his responsibility *in the interest of securing the quality of patient care.* These are, we think it not trite to say, matters of life and death, and the public is best served by striking the balance in this manner.
>
> We therefore decide that a hospital may restrict a physician's privileges by summary action where the quality of the care rendered to the physician's patients has been called into question if the affected physician is given an adjudicatory hearing within a reasonable time after his privileges are restricted.

*Id.* at 310 (footnote omitted) (emphasis added). We agree with this rationale and hold that a hospital may summarily suspend a doctor's privileges if the suspension is in the best interests of patient care and the doctor is afforded a hearing within a reasonable time after the suspension. The procedure followed here was proper.

## THE AFFIDAVITS

In view of our disposition of this case, it is unnecessary to resolve Storrs' contention that the superior court erred in basing its grant of summary judgment to the hospital in part on materials not presented at either the ARC or JRC hearings.

## ATTORNEY'S FEES

Storrs argues that the superior court abused its discretion in awarding attorney's fees. We need not address this issue because our disposition of the case makes it necessary to vacate the award. Since the hospital is no longer the prevailing party, it is not entitled to attorney's fees.[22]

The case is REVERSED in part, VACATED in part and REMANDED to the superior court in accordance with the provisions of our order of December 27, 1979.[23]

---

**21.** Under the provisions of article VI, subsection 3, of the by-laws, a summary suspension of physicians who were originally members of the hospital staff should be based on acts of gross negligence. When as a result of such acts action must be taken immediately in the best interest of patient care at the hospital, a physician may be summarily suspended under the provisions of article VII, section 2. Our discussion pertains to the legality of such a summary suspension. While Gianni did not indicate the application of a gross negligence standard in the summary suspension of Storrs, we consider the issue as essentially mooted by the subsequent full hearing and have remanded to the Judicial Review Committee for application of the correct standard.

**22.** The trial court awarded attorney's fees under Civil Rule 82. To the extent the case involved an appeal from an administrative agency, attorney's fees should have been awarded under Appellate Rule 29(d). *See State v. Smith,* 593 P.2d 625, 630–31 (Alaska 1979).

**23.** Our order provided that the "case is remanded to the superior court with instructions to remand to the hospital Judicial Review Committee for the purpose of determining whether the summary suspension . . . was justified . . . ."