VALLEY HOSPITAL ASSOCIATION, INC., and James G. Walsh, Valley Hospital Executive Director, Appellants,

v.

MAT–SU COALITION FOR CHOICE, Dr. Susan Lemagie, and Jane Does I–X, Appellees.

No. S–7417.

Supreme Court of Alaska.

Nov. 21, 1997.

Brian J. Brundin, Brundin, Inc., Anchorage, and James Bopp, Jr., Bopp, Coleson & Bostrom, Terre Haute, IN, for Appellants.

Stephan H. Williams, Cooperating Attorney for the Alaska Civil Liberties Union, Anchorage, and Janet L. Crepps and Kathryn Kolbert, Center for Reproductive Law & Policy, New York, NY, for Appellees.

Susan Wright Mason, Atkinson, Conway & Gagnon, Anchorage, for Amicus Curiae Alaska State Hospital and Nursing Home Association.

Paul Benjamin Linton, Americans United for Life, Chicago, IL, and Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Amici Curiae Members of the Alaska Legislature.

Jeffrey M. Feldman and Susan Orlansky, Young, Sanders & Feldman, Anchorage, for Amici Curiae American College of Obstetricians and Gynecologists and American Medical Women's Association; Inc.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

Valley Hospital Association (VHA) seeks to reverse the superior court's summary judgment declaring unenforceable and permanently enjoining enforcement of its policy limiting abortion. We affirm the superior court. We hold that (1) Article I, section 22 of the Alaska Constitution encompasses reproductive rights, including abortion; (2) VHA is a quasi-public institution subject to the Alaska Constitution; (3) VHA's abortion policy is an unconstitutional restriction on the right to abortion; (4) AS 18.16.010(b) is unconstitutional to the extent it applies to quasi-public institutions; and (5) the superior court's award of attorney's fees was not an abuse of discretion.

### II. FACTS AND PROCEEDINGS

VHA is a nonprofit corporation organized under Alaska law. It owns and operates a thirty-six-bed hospital in Palmer. The hospital is licensed by the State of Alaska (State); it is the only hospital in the Matanuska–Susitna (Mat–Su) Valley. The hospital facility currently in use was rebuilt and expanded in the early 1980s, using $10.7 million in State funds and five acres of land donated by the City of Palmer. VHA is not affiliated with or operated by any religious organization. The corporation "is organized to serve public interests."

VHA's Board of Directors is divided into two boards, the Association Board and the Operating Board. The Association Board raises money and acquires property for the hospital and elects the Operating Board. The Operating Board has all the other powers and functions of the Board of Directors, including establishing hospital policy.

VHA is a membership organization. Any adult may become a VHA member upon paying a five dollar application fee. Members who are residents of the Mat–Su Borough, denominated "general members," annually elect the Association Board.

Abortion has been permitted in Alaska since 1970, when the state legislature passed the current abortion law.[1] VHA permitted lawful abortion procedures at its facility from 1970 until 1992.[2] In 1992 abortion opponents organized a campaign to enlarge the membership of VHA. In April 1992 a larger-than-usual membership elected the Association Board, which then elected the Operating Board. In September 1992 the Operating Board enacted a new policy on abortion. The policy prohibits abortions at the hospital unless (1) there is documentation by one or more physicians that the fetus has a condition that is incompatible with life; (2) the mother's life is threatened; or (3) the pregnancy is a result of rape or incest. All VHA Operating Board members supported this new policy.

The Mat–Su Coalition for Choice, Dr. Susan Lemagie, and ten unnamed women (Coalition) filed suit against VHA and its executive director, seeking declaratory and injunctive relief. The Coalition then filed a motion for a preliminary injunction against VHA's abortion policy. The superior court granted the motion.[3] Its order temporarily

---

1. AS 18.16.010 provides:

   (a) An abortion may not be performed in this state unless
   (1) the abortion is performed by a physician or surgeon licensed by the State Medical Board under AS 08.64.200;
   (2) the abortion is performed in a hospital or other facility approved for the purpose by the Department of Health and Social Services or a hospital operated by the federal government or an agency of the federal government;
   . . . .
   (b) Nothing in this section requires a hospital or person to participate in an abortion, nor is a hospital or person liable for refusing to participate in an abortion under this section.

2. In July 1991 Humana Hospital in Anchorage stopped allowing elective abortions. VHA concedes that except pursuant to the superior court injunction, there is no hospital or other facility available in the Anchorage/Mat–Su area at which a woman can have a second trimester elective abortion.

3. In its order granting the Coalition a preliminary injunction, the superior court determined that the Coalition had shown a clear probability of success in establishing the following propositions: (1) Valley Hospital is a quasi-public hospital; (2) the Alaska Constitution provides greater protection for individual rights than the United

enjoined enforcement of VHA's new abortion policy and restored the status quo existing before the policy was enacted. The court then granted the Coalition's motion for summary judgment[4] and permanently enjoined VHA

1. from enforcing any policy, rule, regulation, practice, or custom prohibiting the performance of any lawful abortion procedure at Valley Hospital;

2. from refusing to permit the facilities of Valley Hospital to be used for the performance of any lawful abortion procedure by qualified medical personnel;

3. and from imposing any restriction on the performance or scheduling of any lawful abortion procedure at Valley Hospital which is not based on accepted, established medical practices or requirements with respect to such procedures.

The superior court noted that nothing in the permanent injunction required anyone affiliated with the hospital "to participate directly in the performance of any abortion procedure if that person, for reasons of conscience or belief, objects to doing so."

The superior court granted full reasonable attorney's fees in the amount of $110,000 to the Coalition in a separate order. VHA appeals the injunction, the summary judgment, and the award of attorney's fees to the Coalition.

## III. *DISCUSSION*

### A. *Standard of Review.*

■■■ We apply our independent judgment in reviewing the questions of law presented in this appeal, adopting rules of law which are most persuasive in light of precedent, reason, and policy. *Guin v. Ha,* 591

States Constitution; (3) the right to choose an abortion is a fundamental right guaranteed by article I, section 22 of the Alaska Constitution; (4) there is no compelling state interest in Valley Hospital's ban on abortions; and (5) AS 18.16.010(b) does not immunize Valley Hospital from violating Alaskans' constitutional right to reproductive choice, including abortions.

4. The superior court's order granting summary judgment was

based on the reasons articulated in the Court's earlier decision granting a preliminary injunc-

P.2d 1281, 1284 n. 6 (Alaska 1979). We review the award of attorney's fees for abuse of discretion. *Bromley v. Mitchell,* 902 P.2d 797, 804 (Alaska 1995). An abuse of discretion is established only where the court's determination is manifestly unreasonable. *Id.*

### B. *The Alaska Constitution Protects Reproductive Autonomy, Including the Right to Abortion, More Broadly Than Does the United States Constitution.*

#### 1. *The United States Constitution*

The Supreme Court's articulation of the United States Constitution's protection of reproductive rights establishes the minimum protection provided to women in Alaska.[5] This protection includes the right to an abortion. Under *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973), this right could be limited only where required by a compelling state interest. *Id.* States could regulate abortions performed before a fetus became viable only when such regulation was necessary to ensure the life and health of the mother. *Id.* at 163, 93 S.Ct. at 731–32.

The compelling state interest test no longer accurately reflects federal constitutional law. Arguably, the prevailing federal view is that a state may regulate abortions so long as their regulation does not impose "an undue burden on a woman's ability" to decide to have an abortion. *Planned Parenthood v. Casey,* 505 U.S. 833, 875, 112 S.Ct. 2791, 2819, 120 L.Ed.2d 674 (1992) (joint opinion of Justices O'Connor, Kennedy, and Souter). The O'Connor plurality substituted the undue burden test for the compelling state interest test in recognition of the view that there "is a substantial state interest in poten-

tion, the protections of the right to privacy contained in Article I, § 22 of the Alaska Constitution, and the fact that Valley Hospital is a non-sectarian, non-profit, quasi-public hospital.
(Citation omitted.)

5. *See Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

tial life throughout pregnancy." *Id.* at 876, 112 S.Ct. at 2820. The following paragraphs from the joint opinion in *Casey* suggest the current state of federal constitutional law concerning reproductive rights:

(a) To protect the central right recognized by *Roe v. Wade* while at the same time accommodating the State's profound interest in potential life, we will employ the undue burden analysis as explained in this opinion. An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.

(b) We reject the rigid trimester framework of *Roe v. Wade*. To promote the State's profound interest in potential life, throughout pregnancy the State may take measures to ensure that the woman's choice is informed, and measures designed to advance this interest will not be invalidated as long as their purpose is to persuade the woman to choose childbirth over abortion. These measures must not be an undue burden on the right.

(c) As with any medical procedure, the State may enact regulations to further the health or safety of a woman seeking an abortion. Unnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right.

(d) Our adoption of the undue burden analysis does not disturb the central holding of *Roe v. Wade,* and we reaffirm that holding. Regardless of whether exceptions are made for particular circum-

stances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.

(e) We also reaffirm *Roe's* holding that "subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." *Roe v. Wade,* 410 U.S. at 164–65, 93 S.Ct. at 732.

505 U.S. at 878–79, 112 S.Ct. at 2821.

2. *The Alaska Constitution*

We sometimes have taken a broad view of our role in defining state constitutional rights:

[W]e are under a duty to develop additional constitutional rights and privileges under our Alaska Constitution if we find such fundamental rights and privileges to be within the intention and spirit of our local constitutional language and to be necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage.

*Baker v. City of Fairbanks,* 471 P.2d 386, 401–02 (Alaska 1970) (extending the constitutional right to a jury trial).[6] Thus, our articulation of the protection of reproductive rights under Alaska's constitution may be broader than the minimum set by the federal constitution. *Id.* at 401 ("[This court is] at liberty to make constitutional progress in Alaska by our own interpretations, as long as we measure up to the national standards which are required by the United States Supreme Court.").[7]

---

**6.** VHA interprets this language as a two-prong test which must be met before we may find a constitutional right. We did not interpret this language from *Baker* as VHA now urges us to do when we decided either *Breese v. Smith,* 501 P.2d 159 (Alaska 1972) (holding that governmental control of personal appearance is antithetical to the concept of personal liberty), or *Ravin v. State,* 537 P.2d 494 (Alaska 1975) (holding that privacy in the home is a fundamental right), although we found a right to exist under the Alaska Constitution in each of those cases.

**7.** Other states have interpreted their constitutions to protect reproductive rights more extensively than does the federal constitution. *Committee to Defend Reprod. Rights v. Myers,* 29 Cal.3d 252, 172 Cal.Rptr. 866, 625 P.2d 779

(1981) (striking down legislation restricting public funding of abortions as unconstitutional under the state's constitutional privacy guarantee); *American Academy of Pediatrics v. Van de Kamp,* 214 Cal.App.3d 831, 263 Cal.Rptr. 46 (1989) (upholding an injunction preventing implementation of restrictions on abortion rights of minors, requiring a compelling state interest before invasion of minors' privacy rights); *In re T.W.,* 551 So.2d 1186 (Fla.1989) (reaffirming the right to choose to terminate a pregnancy as a fundamental state constitutional right and striking down legislation restricting abortion rights); *Hope v. Perales,* 150 Misc.2d 985, 571 N.Y.S.2d 972 (Sup. Ct.1991) (applying a strict scrutiny standard for fundamental rights and determining that state failure to fund medically necessary abortions violated state constitution); *Davis v. Davis,* 842

■ Article I, section 22 of the Alaska Constitution provides:

The right of the people to privacy is recognized and shall not be infringed.

This express privacy provision was adopted by the people in 1972. It provides more protection of individual privacy rights than the United States Constitution. *Messerli v. State,* 626 P.2d 81, 83 (Alaska 1980) (balancing the individual right to personal autonomy and free speech with the need for an informed electorate); *Ravin v. State,* 537 P.2d 494, 514–15 (Alaska 1975) (Boochever, J. concurring) ("Since the citizens of Alaska, with their strong emphasis on individual liberty, enacted an amendment to the Alaska Constitution expressly providing for a right to privacy not found in the United States Constitution, it can only be concluded that that right is broader in scope than that of the Federal Constitution.").

A woman's control of her body, and the choice whether or when to bear children, involves the kind of decision-making that is "necessary for ... civilized life and ordered liberty." *Baker,* 471 P.2d at 401–02. Our prior decisions support the further conclusion that the right to an abortion is the kind of fundamental right and privilege encompassed within the intention and spirit of Alaska's constitutional language. "[D]ecisions whether to accomplish or prevent conception are among the most private and sensitive." *Falcon v. Alaska Pub. Offices Comm'n,* 570 P.2d 469, 479 n. 42 (Alaska 1977) (holding that a physician who specialized in contraception and abortion could not be required to disclose the names of his patients); *see also Cleveland v. Municipality of Anchorage,* 631 P.2d 1073, 1080 (Alaska 1981) (holding that abortion clinic protests cause patients to "suffer emotional distress as a result of appellants' invasion of their privacy during a particularly sensitive period"); *Ravin,* 537 P.2d at 502 (holding that decisions about contraception involve "significantly personal areas").

We stated in *Breese v. Smith,* 501 P.2d 159, 169 (Alaska 1972), that "few things [are] more personal than one's body." [8] In *Breese,* a school policy regulating hair length was at issue; the regulation was held unconstitutional because the State failed to show a compelling interest that justified the policy. *Id.* at 170–72. Surely "few things are more personal" than a woman's control of her body, including the choice of whether and when to have children.

Of all decisions a person makes about his or her body, the most profound and intimate relate to two sets of ultimate questions: first, whether, when and how one's body is to become the vehicle for another human being's creation; second, when and how—this time there is no question of "whether"—one's body is to terminate its organic life.

Laurence H. Tribe, *American Constitutional Law* 1337–38 (2d ed.1988). We agree that "[t]he decision whether or not to have a child is fraught with specific physical, psychological, and economic implications of a uniquely

S.W.2d 588 (Tenn.1992) (extending state constitutional right to privacy beyond federal right in a custody dispute over divorced couple's frozen embryos).

8. *Breese* was decided before the 1972 passage of the privacy amendment now found in article I, section 22 of the Alaska Constitution. *Breese* relied exclusively on the inherent rights provision found in article I, section 1 of the Alaska Constitution. The Coalition argues that article I, section 1 of the Alaska Constitution protects abortion as a fundamental right. Because we hold this right is grounded in the privacy provision of the constitution, we do not address whether the right could be based solely on article I, section 1. While *Breese's* discussion of personal autonomy remains instructive, we choose to analyze reproductive rights under the privacy provision of our constitution, as other states have done. *See, e.g., In re T.W.,* 551 So.2d at 1193.

The relationship between a woman and her doctor is threatened by VHA's abortion policy, and thus privacy rights are implicated in addition to the notions of personal autonomy that were at issue in *Breese.* The information exchange between a woman and her doctor about the woman's health and her reproductive choices is intensely private. The reasons a doctor and patient choose a medical procedure, so long as it is legal, must not be subject to the approval of a hospital's board of directors, according to their own values.

Other privacy interests are also implicated. If a woman is unable to obtain an abortion near her home, there is an increased chance that she will have to reveal her pregnancy to others in order to arrange the necessary travel. The fact that a woman has visited a certain doctor can be intensely private, when the doctor is one who specializes in abortion services.

personal nature for each woman." *In re T.W.*, 551 So.2d 1186, 1193 (Fla.1989) (citing *Roe*, 410 U.S. at 153, 93 S.Ct. at 727).

■ For the above reasons, we are of the view that reproductive rights are fundamental, and that they are encompassed within the right to privacy expressed in article I, section 22 of the Alaska Constitution. These rights may be legally constrained only when the constraints are justified by a compelling state interest, and no less restrictive means could advance that interest. These fundamental reproductive rights include the right to an abortion. The scope of the fundamental right to an abortion that we conclude is encompassed within article I, section 22, is similar to that expressed in *Roe v. Wade.* We do not, however, adopt as Alaska constitutional law the narrower definition of that right promulgated in the plurality opinion in *Casey.*

VHA argues that there can be no state constitutional protection for reproductive rights under article I, section 22, because the section was intended to encompass protection from unwarranted surveillance and data collection by the State and private businesses. It cannot extend beyond this "informational" privacy.[9] To support this argument, VHA cites newspaper articles and other bills introduced contemporaneously with the adoption of article I, section 22.

■ The only informative legislative history consists of the privacy amendment as originally proposed.[10] The earliest form of the proposed amendment stated:

> Section 22. Right of Privacy. The right of the people to privacy in their opinions, persons, families, reputations and property is recognized and shall not be violated. Neither warrants nor writs of

investigation in abrogation of privacy shall issue, except upon probable cause and upon a showing of a legitimate and pressing need, supported by oath or affirmation, particularly describing the information or data sought and the person whose privacy may be affected, and particularly setting forth the reasons for the search or investigation. The legislature shall provide for the prosecution and punishment of public officials and private parties who act in violation of this section, and shall provide civil remedies to redress and prevent such violations. The legislature shall provide for the protection and security of information available to the State to the extent necessary to protect the rights of the individual recognized in this section and shall further provide for the protection and security of information gathered under this section by the State.

1972 Senate Joint Resolution No. 68, 7th Leg., 2d Sess. While the initial draft of the amendment attempted to specify privacy interests to be protected, the final constitutional amendment simply protected the right of the people to privacy. The plain language of article I, section 22 is a broad protection of privacy rights. The legislative history is insufficient to limit the general language of the privacy amendment.

C. *VHA's Abortion Policy Is Subject to the Provisions of the Alaska Constitution.*

We previously have determined that a hospital may be a "quasi-public" institution. *Storrs v. Lutheran Hosps. and Homes Soc'y of Am., Inc.*, 609 P.2d 24 (Alaska 1980). In *Storrs,* we held that a quasi-public hospital "cannot violate due process ... in denying staff privileges."[11] *Id.* at 28. The hospital

---

**9.** The Alaska State Hospital and Nursing Home Association, argues only that the "legislative" history of the amendment prevents this court from applying the privacy provision of the constitution to private parties. We have already established that proposition. *See Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1130 (Alaska 1989).

**10.** The Alaska State Hospital and Nursing Home Association argues that a summary of a House Judiciary Committee meeting during which the proposed amendment was modified is evidence that the privacy clause was intended to apply only to informational privacy. The meeting sum-

mary is largely a debate over grammar and style and provides no information which alters our interpretation of article I, section 22. *See* H. Jud. Comm. minutes at 318–19, 7th Leg., 1st Sess. (May 30, 1972).

**11.** One state court has rejected this application of procedural due process to private hospitals. *See Hottentot v. Mid–Maine Med. Ctr.,* 549 A.2d 365, 368 (Me.1988). At least eight other states have concluded that private hospitals must follow procedural due process for physician staffing decisions. *Id.* at 368 n. 4.

was quasi-public because: (1) it was the only hospital serving the community; (2) the construction of the hospital was funded in significant part by State and federal grants; and (3) over twenty-five percent of the funds received for hospital services came from governmental sources. *Id.* *Storrs* established that a quasi-public medical facility is bound to protect constitutional rights affected by the administration of the hospital.[12]

The elements that led us to conclude that the hospital in *Storrs* was quasi-public show that the hospital in this case is quasi-public; thus, the conduct of VHA qualifies as "state action," meaning that it "may be fairly treated as [the action] of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), *quoted in United States Jaycees v. Richardet,* 666 P.2d 1008, 1013 (Alaska 1983).

■ In order to determine whether the hospital operated by VHA is a quasi-public institution, we look to a number of factors, just as we did in *Storrs.* First, VHA has a special relationship with the State through the State's Certificate of Need program.

Under this program, the State must review and approve expenditures of one million dollars or more for construction or alteration of a health care facility. AS 18.07.031. The Department of Health and Social Services determines whether to grant a Certificate of Need based on health care demand and resources. AS 18.07.041.[13] This program creates in VHA a type of health care monopoly. Indeed, VHA is the only hospital serving the Mat–Su Valley, just as the hospital in *Storrs* was the only hospital serving the Fairbanks area. The public need for medical facilities makes this sort of regulation essential. However, such monopoly privileges may not be used by VHA to limit access to lawful medical procedures for moral or religious reasons.

Second, VHA has received construction funds, land, and operating funds from the State, local, and federal governments,[14] including more than ten million dollars for construction from the State and a grant of five acres of public land from the City of Palmer.[15] Money from the city and borough came from pass-through grants from the State legislature.[16] VHA is required to oper-

**12.** VHA argues that constitutional due process was never at issue in *Storrs* because the hospital stipulated that Dr. Storrs was entitled to due process. We have stated, however, that *Storrs* was a constitutional due process case. *Kiester v. Humana Hosp. Alaska, Inc.,* 843 P.2d 1219, 1223 n. 2 (Alaska 1992); *see also Amerada Hess Pipeline Corp. v. Alaska Pub. Util. Comm'n,* 711 P.2d 1170, 1180 (Alaska 1986) (relying on *Storrs* to find the right to an impartial decision maker basic to a guarantee of due process). Furthermore, the *Storrs* court would not have needed to address whether Dr. Storrs received due process were he not entitled to it. The determination that due process applied was material to the holding.

**13.** AS 18.07.041 provides:

The office shall grant a sponsor a certificate of need or modify a certificate of need if the availability and quality of existing health care resources or the accessibility to those resources is less than the current or projected requirement for health services required to maintain the good health of citizens of this state.

**14.** VHA's assets totaled $31.7 million as of December 31, 1993. Between 1985 and 1993, VHA provided $37.5 million in unreimbursed care. In 1991, 14.71% and 5.98% of VHA's gross receipts were from Medicare and Medicaid respectively. VHA's April 1993 Certificate of Need application to the State showed that Medicare and Medicaid

receipts total approximately $3.75 million to $5.1 million for the 1990, 1991, and 1992 fiscal years. This is approximately 25% of VHA's patient revenues for those three years.

**15.** The Alaska State Hospital and Nursing Home Association argues that money received under the federal Hill–Burton Act cannot be used as a basis for requiring hospitals to perform abortions. 42 U.S.C. § 300a–7(b). The record does not show that any Hill–Burton money was used when the facilities were rebuilt in the early 1980s.

**16.** The statute allowing pass-through grants requires the municipality to agree that the facilities and services provided by the grant will be available for the use of the general public, and that the municipality will operate and maintain the facility for the practical life of the facility. AS 37.05.315(a) and (c). This is an additional indication that VHA is a quasi-public institution. *See* 1986 Informal Op. Att'y Gen. 1 (Apr. 8, 1982) (stating that municipality accepting funds for construction of a public facility must ensure the operation and maintenance of the facility, even if the facility will be owned and operated by a private non-profit organization); *see also* 1991 Informal Op. Att'y Gen. 19 (Sept. 22, 1986) (indicating that the State may have a cause of action against a city that allows a facility funded by pass-through grants to be converted to private use).

ate as a "public facility" under State laws governing the pass-through grants from the State to the city and borough. AS 37.05.315(a) and (c). Finally, a significant portion of the operating funds VHA receives for hospital services comes from governmental sources. We also consider the fact that the hospital is a community hospital whose board is elected by a public membership. As the superior court noted, the public governance structure "strongly favors a finding that the hospital is 'quasi-public.' "

VHA argues that the *Storrs* quasi-public criteria are limited to determining whether a hospital must afford due process in staffing determinations and should not be extended to require hospitals to protect other constitutional rights. VHA relies on language in *Kiester*, which discusses limitations on judicial review to avoid intruding upon a hospital's recognized expertise in evaluating medical qualifications. *Kiester v. Humana Hosp. Alaska, Inc.*, 843 P.2d 1219, 1223 (Alaska 1992). However, no medical qualification or decision is at issue here. Neither the issue whether the hospital is quasi-public, nor the issue whether the abortion policy is invalid on constitutional grounds, involves intruding on a medical decision that is within the hospital's expertise. Likewise, VHA has acknowledged that its abortion policy is not a medical policy, but one founded on "sincere moral conscience." The scope and application of the Alaska Constitution to this kind of policy presents a question of law that is within this court's expertise.

Considering all factors similar to those found persuasive in *Storrs*, we conclude that the hospital operated by VHA is a quasi-public hospital. Its policy concerning abortion must comply with the Alaska Constitution.

### D. VHA Has Not Demonstrated a Compelling State Interest Justifying Its Abortion Policy.

■ Since VHA is a quasi-public institution, its policies are subject to the limitations which the Alaska Constitution imposes on legislation and government regulations. Under Alaska's Constitution, there is a protected right to an abortion, and VHA's policy interferes with that right. Since the right is fundamental, it cannot be interfered with unless the interference is justified by a compelling state interest. Further, assuming the existence of such an interest, there also must be no less restrictive means by which the interest might be advanced.[17] *In re A.B.*, 791 P.2d 615, 621 (Alaska 1990) and *Vogler v. Miller*, 651 P.2d 1, 5 (Alaska 1982). VHA has not demonstrated a compelling state interest justifying its policy. It has not advanced any medical, safety, or other public-welfare interest to justify precluding elective abortions. VHA has stated unequivocally that its policy is a matter of conscience, and not a medical, safety, or economic issue. As VHA cannot raise a free exercise claim,[18] this does not amount to a compelling state interest.

### E. Alaska Statute 18.16.010(b) Is Unconstitutional to the Extent It Applies to Quasi–Public Institutions.

■ VHA argues that even if the Alaska Constitution encompasses the right to an abortion, and even if the hospital is a quasi-public institution, the legislature already has addressed the issue in AS 18.16.010(b),[19] and has determined that a "hospital may decline to offer abortions for reasons of moral conscience." VHA argues that "[c]onsistent with its previous approach to the highly-sensitive question of abortion, this Court

---

17. We have used both the compelling state interest/least restrictive means test and the legitimate state interest/close and substantial relationship test in the privacy context. *See Jones v. Jennings*, 788 P.2d 732, 737–38 (Alaska 1990); *State v. Erickson*, 574 P.2d 1 (Alaska 1978); *Ravin*, 537 P.2d at 504. However, "[w]here the right to privacy is manifested in terms of interests ... squarely within personal autonomy," as here, we use the compelling state interest test. *Erickson*, 574 P.2d at 22, n. 144.

18. *See infra* note 20. Nothing said in this opinion should be taken to suggest that a quasi-public

hospital could have a policy based on the religious tenets of its sponsors which could be a compelling state interest. Recognizing such a policy as "compelling" could violate the Establishment Clause of the First Amendment to the United States Constitution. As this point is not raised, we do not rule on it.

19. AS 18.16.010(b) provides:

Nothing in this section requires a hospital or person to participate in an abortion, nor is a hospital or person liable for refusing to participate in an abortion under this section.

should defer to the considered judgment of the legislature." However, we cannot defer to the legislature when infringement of a constitutional right results from legislative action. The issue before us includes the question whether AS 18.16.010(b) is a permissible limitation on a constitutional right.

■■■ VHA has a "sincere moral belief" that elective abortion is wrong.[20] However, constitutional rights "cannot be allowed to yield simply because of disagreement with them." *Brown v. Board of Education,* 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955).

The Alaska Attorney General has concluded that AS 18.16.010(b) is invalid, unless construed to be applicable only to sectarian facilities. 1978 Formal Op. Att'y Gen. No. 8 (February 10, 1978). The New Jersey Supreme Court struck down an almost identical statute:

> To interpret this act to empower a nonsectarian non-profit hospital to refuse to permit its facilities to be used for elective abortions would clearly constitute state action ... [f]or the state to frustrate [the constitutional right to a first trimester abortion] by its action would be violative of the constitutional guarantee.

*Doe v. Bridgeton Hosp. Ass'n,* 71 N.J. 478, 366 A.2d 641, 647 (1976).

■■■ VHA argues that because the statute states that abortions may be performed only in certain situations, but that individuals and institutions may always refuse to participate in or provide them, "the legislature has

determined that the ability to protect one's conscience outweighs the ability to procure an abortion." VHA has no constitutional right at issue; it has at most a statutory right. The legislature, however, may not balance statutory rights against constitutional ones, like the right to an abortion. Therefore, AS 18.16.010(b) is unconstitutional to the extent that it applies to VHA.

### F. *The Superior Court's Award of Attorney's Fees Was Not an Abuse of Discretion.*

■■■ The superior court awarded full reasonable attorney's fees to the Coalition. The court based its decision on the factors articulated in *Anchorage Daily News v. Anchorage School District,* 803 P.2d 402, 404 (Alaska 1990). The superior court concluded that VHA was not a public interest litigant immune from having to pay an award of attorney's fees.[21]

■■■ We review a trial court's determination of a litigant's public interest status under the abuse of discretion standard. *Citizens Coalition for Tort Reform, Inc. v. McAlpine,* 810 P.2d 162, 171 (Alaska 1991). "Such an abuse is regarded as present only where the trial court's decision appears to be manifestly unreasonable or motivated by an inappropriate purpose." *Kenai Lumber Co., Inc. v. LeResche,* 646 P.2d 215, 222 (Alaska 1982).

■■■ VHA asserts two arguments for challenging the fee award: (1) VHA is a public interest litigant;[22] and (2) VHA relied

---

**20.** VHA bases its argument in part on *Frank v. State,* 604 P.2d 1068 (Alaska 1979), a free exercise of religion case based on the First Amendment to the United States Constitution and article I, section 4 of the Alaska Constitution. *See Frank,* 604 P.2d at 1070 (killing of cow moose for funeral potlatch protected as free exercise of religion). VHA is not affiliated with any religion and cannot raise a free exercise claim.

**21.** A party qualifies as a public interest litigant if (1) the case effectuates a strong public policy, (2) numerous people will benefit from the litigation, (3) only a private party could be expected to bring the action, and (4) the party would not have sufficient economic incentive to bring the lawsuit even if the action involved only narrow issues lacking general importance. *Eyak Traditional Elders Council v. Sherstone, Inc.,* 904 P.2d 420, 423 (Alaska 1995).

**22.** The Coalition argues that VHA did not challenge the superior court's determination that VHA is not a public interest litigant in its points on appeal and is barred from doing so now. Alaska Appellate Rule 204(e) provides that this court will consider only points included in the statement of points on appeal. *See also Kalenka v. Taylor,* 896 P.2d 222, 229 (Alaska 1995) (holding that where appellants failed to properly appeal a fee award and offered no mitigating circumstances to explain the failure, they cannot raise the issue). However, whether VHA is a public interest litigant is a legal issue that can be considered on the record before the court. *See, e.g., Oceanview Homeowners Ass'n v. Quadrant Const.,* 680 P.2d 793, 797 (Alaska 1984). Additionally, although VHA's public interest status is not mentioned in the points on appeal, the issue of fees is raised. *See Putnam v. State,* 629 P.2d 35, 39 n. 2 (Alaska 1980). There is no prejudice

in good faith on a statute which authorized its policy.

 A prevailing public interest plaintiff is normally entitled to full reasonable attorney's fees. *Hunsicker v. Thompson,* 717 P.2d 358, 359 (Alaska 1986). We have determined that "where both parties are individual, public interest litigants, neither should be made to bear the fees of the other, each should simply pay their own." *McCormick v. Smith,* 799 P.2d 287, 289 n. 5 (Alaska 1990). However, VHA is not a public interest litigant. We are not persuaded by VHA's assertion that its defense of its abortion policy is in the public interest simply because it raises constitutional issues.

We have decided one case where we determined that attorney's fees should not be awarded against a losing private party in public interest litigation, because an award might have the effect of deterring citizens from litigating issues of public concern. *Whitson v. Anchorage,* 632 P.2d 232, 233 (Alaska 1981). In *Whitson,* the defendant was an individual who had placed an initiative on the next municipal election ballot, and the plaintiff was the City of Anchorage, which had obtained a judgment finding the initiative illegal and ordering it removed from the ballot. We found it significant that Whitson would have been a traditional private party plaintiff seeking relief against the governmental entity had the city not "beat[en] him to the courthouse steps," making him the nominal defendant. *Id.* at 234. Had the city refused to place his initiative on the ballot, rather than doing so and then suing him to get it removed, Whitson would likely have sued the city and been the traditional private party plaintiff seeking relief against the governmental entity. *Id.* at 233–34. In this case VHA is not an individual raising a public interest defense against a governmental entity. Rather, VHA is a quasi-public institution whose policy has infringed a constitutional right.

VHA also cannot assert its good faith reliance on AS 18.16.010(b). As discussed above, that statute cannot constitutionally be applied to a quasi-public hospital. *See* Part III.E. Because VHA is not a private defendant, as it asserts, it cannot escape

to the Coalition in considering the issue on ap-

liability for attorney's fees by arguing that it relied in good faith on AS 18.16.010(b).

The superior court did not abuse its discretion in awarding fees to the Coalition.

## IV. CONCLUSION

The superior court's summary judgment and injunction are AFFIRMED. The superior court's award of attorney's fees was not an abuse of discretion and is AFFIRMED.

FABE, J., not participating.