*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CLINTON DESJARLAIS, | ) | |
| | ) | Supreme Court No. S-14535 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-05442 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, OFFICE OF | ) | |
| THE LIEUTENANT GOVERNOR, | ) | No. 6777 – May 3, 2013 |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Clinton DesJarlais, pro se, Anchorage, Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

PER CURIAM.

## I.      INTRODUCTION

Clinton DesJarlais filed an application with the Office of the Lieutenant Governor seeking certification of an initiative that would generally prohibit abortion. The lieutenant governor, acting on the advice of the Department of Law, concluded that the initiative was unconstitutional and declined to certify it for circulation.  DesJarlais

filed suit against the State in superior court challenging the lieutenant governor's decision. The superior court granted summary judgment in favor of the State and DesJarlais appeals. Because DesJarlais's proposed initiative is clearly unconstitutional under controlling United States Supreme Court precedent, we affirm the superior court's grant of summary judgment.

## II.     FACTS AND PROCEEDINGS

In November 2010 the Office of the Lieutenant Governor received an application[1] for the "Natural Right to Life Initiative." DesJarlais is one of the co-sponsors of the initiative. Known as 10NRTL, the initiative proposes the following bill:

Natural Right to Life Initiative

BE IT ENACTED BY THE PEOPLE OF THE STATE OF ALASKA

*Section. 1.* AS 18. is amended by adding a new chapter to read:

**Chapter. 18.01. Natural Right to Life.**

*Section. 2.* 18.01. is amended by adding a new section to read:

**Section. 18.01.01. Natural Right to Life.** The State of Alaska shall protect the natural right to life and body of all mankind from the beginning of biological development. We the People affirm that the natural right to life and body of the unborn child supercedes the statutory right of the mother to consent to the injury or death of her unborn child. In life threatening situations the law of necessity shall dictate

---

[1]     An initiative is proposed by filing an application with the lieutenant governor. AS 15.45.020. The lieutenant governor has 60 calendar days to either certify the initiative or notify the initiative committee of the grounds for denial. AS 15.45.070. Upon certification, the initiative proceeds to the petition stage, where the initiative sponsors circulate it and gather signatures supporting its inclusion on the ballot. AS 14.45.090-220.

between the life of the mother and her child.

In January 2011, in response to a request from Lieutenant Governor Mead Treadwell, the Department of Law reviewed the application for compliance with the statutes that prescribe Alaska's initiative process, AS 15.45.040[2] and AS 15.45.080.[3] The Department concluded that 10NRTL "is intended to extinguish a woman's

---

[2] AS 15.45.040 provides:

The proposed bill shall be in the following form:

(1) the bill shall be confined to one subject;

(2) the subject of the bill shall be expressed in the title;

(3) the enacting clause of the bill shall be: "Be it enacted by the People of the State of Alaska;"

(4) the bill may not include subjects restricted by AS 15.45.010.

AS 15.45.010 provides:

The law-making powers assigned to the legislature may be exercised by the people through the initiative. However, an initiative may not be proposed to dedicate revenue, to make or repeal appropriations, to create courts, to define the jurisdiction of courts or prescribe their rules, or to enact local or special legislation.

[3] AS 15.45.080 provides:

The lieutenant governor shall deny certification upon determining in writing that

(1) the proposed bill to be initiated is not confined to one subject or is otherwise not in the required form:

(2) the application is not substantially in the required form; or

(3) there is an insufficient number of qualified sponsors.

constitutional right to privacy as recognized by the United States Supreme Court and the Alaska Supreme Court."[4] It therefore determined that the proposed bill would be "clearly unconstitutional" and in violation of the prohibited-subject requirement of AS 15.45.040, and advised the lieutenant governor not to certify the initiative.[5] The lieutenant governor followed the Department's recommendation and informed DesJarlais of the State's decision in a January 11, 2011 letter.

On February 11, 2011, DesJarlais filed a complaint in superior court challenging the lieutenant governor's denial of his application. DesJarlais filed an additional pleading on September 16, 2011 that appeared to amend his complaint to add additional claims and requests for relief. The State did not oppose the additional pleading but instead moved for summary judgment on all claims.

On November 9, 2011, Superior Court Judge Patrick J. McKay granted the State's motion for summary judgment and found that "[a] law forbidding abortion is 'clearly unconstitutional' under controlling U.S. Supreme Court and Alaska Supreme Court precedent. . . . DesJarlais' proposed bill is 'clearly unconstitutional.' " Following the grant of summary judgment, DesJarlais petitioned the superior court to order the State's attorneys to produce proof of their law licenses. The superior court declined to issue any such order.

DesJarlais appeals, proceeding pro se.

## III.    STANDARD OF REVIEW

"We review grants of summary judgment de novo, exercising our own independent judgment to determine whether the parties genuinely dispute any material facts and, if not, whether the disputed facts entitle the moving party to judgment as a

---

[4]        *See* 2009-11 ATT'Y GEN. OP. 333.

[5]        *Id.*

matter of law."[6] Although we will liberally construe applicable constitutional and statutory provisions when reviewing initiative challenges, we have a duty "to carefully consider the initiative's subject matter, given the constitutional limits on the people's right of direct legislation."[7]

## IV. DISCUSSION

### A. The Lieutenant Governor Properly Refused To Certify 10NRTL.

#### 1. The State can refuse to certify an initiative where controlling authority establishes its unconstitutionality.

Article XI, section 1 of the Alaska Constitution guarantees the people of Alaska the right to enact laws by initiative: "The people may propose and enact laws by the initiative, and approve or reject acts of the legislature by the referendum." This guarantee is not without limits. The Alaska Constitution sets forth procedural requirements that must be followed, as well as restraints on subject matter. Article XI, section 7 sets forth most of the subject matter restrictions: "The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation." Article XII, section 11 also provides, "Unless clearly inapplicable, the law-making powers assigned to the legislature may be exercised by the people through the initiative, subject to the limitations of Article XI."[8] These constitutional limitations are codified

---

[6] *Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 897 (Alaska 2003) (internal quotation marks omitted); *State Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 908 (Alaska 2001).

[7] *Kohlhaas v. State, Office of Lieutenant Governor*, 147 P.3d 714, 717 (Alaska 2006) (*Kohlhaas I*).

[8] "The phrase 'unless clearly inapplicable' was included in the Alaska Constitution so that the initiative would not replace the legislature where the legislature's
(continued...)

in Alaska Statutes 15.45.010 and 15.45.040.

Generally, judicial review of the constitutionality of an initiative is unavailable until after it has been enacted by the voters, "since an opinion on a law not yet enacted is necessarily advisory."[9] However, "there are two exceptions to this rule: first, where the initiative is challenged on the basis that it does not comply with the State's constitutional and statutory provisions regulating initiatives, and second, where the initiative is challenged as clearly unconstitutional or clearly unlawful."[10]

A petition may be rejected as "clearly unconstitutional" only "if controlling authority leaves no room for argument about its unconstitutionality."[11] In *Kodiak Island Borough v. Mahoney*, we considered the circumstances under which a municipal clerk may deny a petition as unconstitutional under controlling authority.[12] Rejecting the Borough's argument that a clerk may not certify an application for an initiative unless the clerk can conclude unequivocally that the proposed ordinance will be enforceable as a matter of law, we held that a clerk must presume an initiative to be constitutional absent clear authority establishing otherwise, and "may only reject on substantive grounds a

---

[8]     (...continued)
power serves as a check on other branches of government, such as legislative power to define courts' jurisdiction or override judicial rules." *Id.* at 717 (internal quotation marks omitted).

[9]     *Id.*

[10]     *Carmony v. McKechnie*, 217 P.3d 818, 819-20 (Alaska 2009).

[11]     *Alaska Action Ctr., Inc. v. Municipality of Anchorage*, 84 P.3d 989, 992 (Alaska 2004) (citations omitted); *see also Brooks v. Wright*, 971 P.2d 1025, 1027 (Alaska 1999) ("General contentions that the provisions of an initiative are unconstitutional are justiciable only after the initiative has been enacted by the electorate.") (internal quotation marks and alteration omitted).

[12]     71 P.3d 896, 898 (Alaska 2003).

pre-election petition that proposes a *clearly unconstitutional ordinance*."[13]   As an example, we noted that "an initiative that is properly submitted procedurally but that proposes an ordinance mandating local school segregation based on race" would be clearly unconstitutional under controlling United States Supreme Court precedent.[14]

### 2.     10NRTL is clearly unconstitutional under controlling authority.

In *Roe v. Wade*, the United States Supreme Court held that a state may not enact a broad ban on abortion because such a ban would violate a person's constitutional right to privacy.[15]   DesJarlais contends that *Roe v. Wade* is not controlling precedent because "[l]iving preborn children have natural rights to life."  DesJarlais further argues that we "should review the Superior Court's factual finding that *Roe v. Wade* is controlling Federal Case law as clearly erroneous standard.  Human life begins at the beginning of biological development.  Therefore, preborn children have natural rights secured by the Alaska Constitution Article 1 Section 1."  DesJarlais thus implicitly argues[16] that 10NRTL is not "clearly unconstitutional" because *Roe v. Wade* is not controlling authority.

The State responds that "the lieutenant governor properly refused to certify [10NRTL] and the superior court properly granted summary judgment to the state"

---

[13]     *Id.* at 898, 900 (emphasis added).

[14]     *Id.* at 900, n.22 (citing *Brown v. Board of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955)); *see also Alaska Action Ctr.*, 84 P.3d at 992 ("The initiative's substance must be on the order of a proposal that would mandate local school segregation based on race in violation of *Brown v. Board of Education* before the clerk may reject it on constitutional grounds.") (internal quotation marks and alterations omitted).

[15]     410 U.S. 113, 152-65 (1973).

[16]     "We consider pro se pleadings liberally in an effort to determine what legal claims have been raised." *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012).

because "the proposed bill would forbid abortion except possibly when necessary to save a pregnant woman's life." The State further asserts that under *Roe v. Wade* and this court's interpretation of the privacy clause of the Alaska Constitution, such a law would be "clearly contrary to controlling constitutional precedent." The State responds to DesJarlais's contention that *Roe v. Wade* is not controlling authority by arguing, "Although there is always a possibility that courts will reconsider their past constitutional rulings, the lieutenant governor's decision not to certify an initiative must be based on the precedent that currently controls, not on speculation about whether that precedent will be overturned."

In granting the State's motion for summary judgment, the superior court found, "While not stating explicitly that the bill is meant to prevent abortions, the language of the 'Natural Right to Life Initiative,' considered with statements DesJarlais made in the application, indicates that the purpose of the proposed bill is to ban abortion in most cases." The superior court, relying on *Roe v. Wade* and our decision in *Valley Hospital Association, Inc. v. Mat-Su Coalition for Choice*,[17] concluded that "[a] law forbidding abortion is 'clearly unconstitutional' under controlling U.S. Supreme Court and Alaska Supreme Court precedent. . . . Given these longstanding, controlling precedents — which cannot be ignored by either the Office of the Lieutenant Governor or this Court — DesJarlais' proposed bill is 'clearly unconstitutional.' "

10NRTL does not explicitly state that it is intended to ban abortion, but it provides that "the natural right to life and body of the unborn child supercedes the statutory right of the mother to consent to the injury or death of her unborn child." It excepts only life-threatening situations, in which case "the law of necessity shall dictate between the life of the mother and her child." DesJarlais further explained "the intent

---

[17]     948 P.2d 963 (Alaska 1997).

of the Law of Necessity" in his letter to the lieutenant governor requesting initiative approval:

> The Law of Necessity means that in life threatening situations any act(s) done with the best interests to preserve the life of the mother and her child would be protected. For example a firefighter, involved in [a] car accident, may assess that there is such a case where both the life of the mother and her child a [sic] certain to be lost unless something is done. If a prosecution for the loss of life took place regarding the actions taken under these circumstances then they would be protected upon proof before a jury that the actions were done to prevent the loss of life of both the mother and her unborn child.

Controlling United States Supreme Court precedent establishes that a broad ban on abortion would be "clearly unconstitutional."[18] In *Roe v. Wade*, the Court considered the constitutionality of Texas criminal abortion statutes that prohibited abortion at any stage of pregnancy except where necessary to save the life of the mother.[19] The Court held that, although a woman's right to an abortion is not absolute and must be considered against compelling state interests, a broad ban on abortion violates a woman's constitutional right to privacy: "[A] state criminal abortion statute . . . that excepts from criminality only a life-saving procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourth Amendment."[20]

---

[18]    *See Roe*, 410 U.S. at 164 (holding unconstitutional Texas criminal abortion statutes prohibiting abortion at any stage of pregnancy except where necessary to save mother's life).

[19]    *Id.* at 117-18.

[20]    *Id.* at 164. In *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S.
(continued...)

DesJarlais's proposed bill would preclude abortion to at least the same extent as the Texas criminal statutes at issue in *Roe v. Wade*. The Texas statutes provided exceptions for abortions where the mother's life was threatened,[21] whereas DesJarlais's initiative would permit abortion only where dictated by "the law of necessity," in which case a defendant would still be subject to criminal prosecution. Because DesJarlais's initiative would prohibit abortion to an extent that the United States Supreme Court has deemed unconstitutional, it is "clearly unconstitutional" under controlling authority.

### B. The State Is Not Legally Obligated To Outlaw Abortion.

Relying on article I, section 1 of the Alaska Constitution, DesJarlais argues that "the State of Alaska is Constitutionally bound to preserve life." DesJarlais argues that because human life begins at the beginning of biological development, "preborn children have natural rights secured by the Alaska Constitution Article 1 Section 1." He thus implicitly argues that because "preborn children" are protected under the Alaska Constitution, the State is legally obligated to outlaw abortion.

The State responds that "DesJarlais' arguments that various provisions of state and federal law require the state to ban abortion are precluded by . . . controlling caselaw . . . . [B]oth the U.S. Supreme Court and this Court have held that the federal

---

[20] (...continued)
833 (1992), a plurality of the Court adopted a different test than the "compelling state interest" test employed in *Roe*, holding that a state may regulate abortions so long as the regulation does not impose an "undue burden" on the woman's ability to decide to have an abortion. *Id.* at 874. However, the Court reaffirmed the central holding of *Roe*: "Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Id.* at 875.

[21] *Roe*, 410 U.S. at 117-18.

and state constitutions prohibit states from banning abortion." The State thus argues that "the lieutenant governor . . . cannot have violated any state or federal law by failing to ban abortion," and summary judgment was properly granted.

Article I, section 1 of the Alaska Constitution provides:

> This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides its own protections to "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof."[22]

In *Roe v. Wade*, the United States Supreme Court expressly held that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn."[23] Thus, even if the State has a constitutional duty to protect all persons' natural right to life, as DesJarlais asserts, this duty does not extend to the unborn under controlling federal law. Furthermore, the Alaska Constitution cannot guarantee limitless protections to the unborn because *Roe v. Wade* precludes all states from guaranteeing protections to

---

[22] U.S. Const. amend. XIV, § 1.

[23] 410 U.S. at 158. DesJarlais argues that "[t]he Justices in *Roe v. Wade* stated that life begins at conception (beginning of biological development)." But contrary to DesJarlais's argument, *Roe v. Wade* does not state that life begins at conception. The Court chose not to "resolve the difficult question of when life begins," concluding that the judiciary, "at this point in the development of man's knowledge, is not in a position to speculate as to the answer." *Id.* at 159.

the unborn that would ultimately result in a broad ban on abortion.[24]

DesJarlais looks to other jurisdictions for support, arguing that "the U.S. 8th Circuit Court Ruled that preborn children are alive in [*Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*.]"[25] We are not bound by the Eighth Circuit's decision; rather, we are bound by controlling United States Supreme Court precedent and Alaska Supreme Court precedent.[26]

DesJarlais additionally references the United States Constitution, the Bible, the Declaration of Independence, maxims of law, the Nuremberg Trials, various Alaska statutes and rules of procedure, and various dictionaries, apparently in support of his argument that the State should outlaw abortion. The State correctly responds that many of the sources cited by DesJarlais "cannot create cognizable legal claims."

DesJarlais's argument also fails to recognize that we are governed by positive constitutional law.[27] We are bound to follow the text, structure, and binding

---

[24] *Id.* at 164-65.

[25] 530 F.3d 724 (8th Cir. 2008) (en banc).

[26] *See Roe*, 410 U.S. at 164-65; *Valley Hosp. Ass'n, Inc. v. Mat-Su Coal. for Choice*, 948 P.2d 963, 969 (Alaska 1997) (holding that reproductive rights, including the right to an abortion, are fundamental rights protected by the Alaska Constitution and "may be legally constrained only when the constraints are justified by a compelling state interest, and no less restrictive means could advance that interest").

[27] *See, e.g.*, Robert P. George, *Justice, Legitimacy, and Allegiance: "The End of Democracy?" Symposium Revisited*, 44 LOY.L.REV. 103, 109 (1998) ("The existence and scope of judicial power to invalidate democratically enacted laws, including laws whose injustice compromises the principles of democracy itself, is settled not by natural law (i.e., the moral law), but by the positive constitutional law of a given democratic polity.").

interpretations of the Constitution.[28]  Thus, neither we nor the lieutenant governor can invalidate a recognized constitutional right, regardless of whether that right purportedly conflicts with natural law.

**C.      DesJarlais Was Not Improperly Denied His Right To A Jury Trial.**

DesJarlais argues that the superior court improperly "usurped the authority of the people by negating" his right to a jury trial.  DesJarlais suggests that he was improperly denied his right to a jury trial because his attorney failed to make a timely request on his behalf.

The question before the superior court — whether 10NRTL is "clearly unconstitutional" — was purely a legal question to be resolved by the judge, not by a jury.[29]  DesJarlais's case presented no factual questions that could have been resolved by a jury; thus DesJarlais's argument concerning his right to a jury trial is without merit.

**D.      The Superior Court Did Not Improperly Refuse To Order The Attorneys And Court To Produce Proof Of Their Law Licenses.**

DesJarlais argues that judges and attorneys "have a duty to produce their oath of office and license to practice law respectively to prove that they are properly authorized to stand in their position."  He asserts that while he recognizes "there are

---

[28]      *See, e.g.*, Philip A. Hamburger, *Natural Rights, Natural Law, and American Constitutions*, 102 YALE L.J. 907, 938 (1993) ("When saying that constitutions and other civil laws should be formulated to reflect natural law, Americans typically were not suggesting that natural law was a kind of constitutional law or a source for constitutional rights not protected by a written constitution.  On the contrary, under modern natural rights analysis, constitutional law and natural law were quite distinct from one another and played very different roles.").

[29]      *See, e.g.*, *Greywolf v. Carroll*, 151 P.3d 1234, 1245 (Alaska 2007) (noting that factual questions should be resolved by a jury); *Dean v. Firor*, 681 P.2d 321, 328 (Alaska 1984) (noting that "the responsibility for deciding questions of law lies with the judiciary").

active Alaska Bar Association numbers next to pleadings," he has "never once seen a State of Alaska license number." DesJarlais asks us to "specify what a valid State of Alaska license to practice law is, so that [he] is with knowledge that the defense lawyers are in compliance with License to Practice Law Statutes [sic]."

Alaska Statute 08.08.020 provides that "[e]very person licensed to practice law in the state shall become a member in the Alaska Bar."[30] The Alaska Bar Rules set forth the requirements for admission to the practice of law.[31] An attorney or judge issued a license number has necessarily met these requirements and is licensed to practice law in Alaska.

Alaska Rule of Civil Procedure 76 provides that if the person signing a pleading or paper is an attorney, "the person's Alaska Bar Association membership number must be entered following the person's name." Thus, the pleadings submitted by the attorneys in this case provide sufficient proof that the attorneys are authorized to practice law in the State of Alaska.

Finally, DesJarlais cites no authority for his claim that a judge has a duty to produce proof of oath of office. This argument is without merit.

## V.    CONCLUSION

We AFFIRM the superior court's grant of summary judgment.

---

[30]    AS 08.08.020(a).

[31]    *See* Alaska Bar R. 5.

-14-                                                    6777